

NOV 3 0 2000
CHAMBERS OF
U.S. DISTRICT JUDGE
ELDON E. FALLON



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2000 DEC -6 AM 11:2

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JERAMIE LATIOLAIS | * | DOCKET NO. 00-0085 (L) (3) |
| | * | |
| VERSUS | * | JUDGE ELDON E. FALLON |
| | * | |
| ELEVATING BOATS, INC. | * | MAGISTRATE LANCE M. AFRICK |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PRE-TRIAL ORDER

1.   A pre-trial conference was held on Tuesday, December 5, 2000 at 3:30 p.m. before the

Honorable Eldon E. Fallon, United States District Judge.

2.   **PRESENT:**

For Plaintiff, Jeramie Latiolais

Mr. Joseph F. Gaar, Jr., Esq.
Post Office Box 2053
Lafayette, Louisiana 70502
Telephone:    (337) 233-3185
Telecopier:    (337) 233-0690

For Defendant, Elevating Boats, Inc.

Mr. Laurence E. Best, Esq.
Mr. Peter S. Koeppel, Esq.
Mr. W. Bartlett Ary, Esq.
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
Telephone:    (504) 598-1000
Telecopier:    (504) 524-1024

For Intervenor, Liberty Mutual Insurance Co.

Mr. Scott B. Kiefer, Esq.
Duncan & Courington, L.L.C.
322 Lafayette Street
New Orleans, Louisiana 70130
Telephone:    (504) 524-5566
Telecopier:    (504) 524-9003

DATE OF ENTRY

DEC 6 2000

3.    **PARTIES:**

    a.    This cause of action is brought by plaintiff, **JERAMIE LATIOLAIS**, who on January 21, 1999, was an employee of Perf-O-Log, Inc. and who was performing wirelining activities on board the lift boat vessel RICK STEIRWALD.

    b.    Defendant, EBI on January 21, 1999, was the owner and operator of the lift boat vessel RICK STEIRWALD.

    c.    Intervenor, Liberty Mutual was the state workers' compensation insurer of Mr. Jeramie Latiolais' employer, Perf-O-Log, Inc. Plaintiff, Jeramie Latiolais.

No other party or claims are now involved in this lawsuit.

4.    **JURISDICTION:**

This Court has jurisdiction of this matter pursuant to 33 U.S.C. § 905(b) of the Longshore and Harborworkers' Compensation Act and the General Maritime Law of the United States.

5.    **MOTIONS:**

Defendant, Elevating Boats, Inc., filed a Motion for Summary Judgment on November 22, 2000, on the issue of liability, asserting that it owes no duty to plaintiff under 33 U.S.C. § 905(b) of the Longshore and Harbor Workers' Compensation Act or otherwise.

Defendant, EBI, has pending before this Court, a Motion for Summary Judgment which is set for hearing for December 6, 2000. Plaintiff has not filed a timely response to defendant's motion, however, defendant has advised plaintiff that defendant would have no opposition to his motion to leave to file an untimely brief *provided* that, first the brief be filed no later than Friday, December 1, 2000, and secondly, that plaintiff have no opposition and that the Court grant defendant its motion for leave to file a reply brief, to address plaintiff's untimely opposition.

Defendant, EBI, has also filed a *Motion to Compel a Functional Capacity Evaluation* pursuant to Federal Rule of Civil Procedure 35. Magistrate Lance Africk denied the motion without

prejudice to EBI to re-urge the motion once the proposed occupational therapist has submitted an outline of his proposed examination or evaluation and has submit the same to plaintiff's physician and defendant's physician to determine whether the proposed FCE would pose any risk of aggravating plaintiff's injuries. Defendant intends to re-urge the Motion to Compel upon satisfaction by the occupational therapist of Magistrate Africk's order.

Defendant, EBI, also intends to file a *Motion in Limine* to exclude the testimony of plaintiff's proposed expert witness, Craig Brasseux. The grounds for the Motion in Limine are under Federal Rules of Evidence 702 and 703, specifically, defendant will contend that Mr. Brasseux, listed by plaintiff as an expert in the field of marine safety, is not qualified under Rule 702 by virtue of any specialized knowledge, skills, experience, training, or education. Additionally, defendant will contend that the proposed testimony does not bear the necessary indicia of reliability and trustworthiness required under Rule 703 and the jurisprudence of the Supreme Court and the Fifth Circuit under Rule 703. Defendant will contend further that Mr. Brasseux's opinions are conclusions were not reached pursuant to a reliable and generally excepted methodology. Defendant's *Motion in Limine* will also challenge the relevance of Mr. Brasseux's proffered testimony under Rule 703.

Defendant, EBI, may file other *Motions in Liminie* on evidentiary grounds.

6.    a.    **Plaintiff, Jeramie Latiolais claims that:**

> Elevating Boats, Inc., was negligent and/or at fault in causing plaintiff's injuries in failing to provide a proper and safe means of ingress and egress from the lift boat vessel RICK STEIRWALD onto the LL&E Well #108 cribbing, which failure resulted in plaintiffs injury.

> The vessel in question, RICK STEIRWALD, was unseaworthy insofar as it was inadequately and/or improperly equipped with a proper and safe means of ingress and egress.

3

Elevating Boats, Inc. breached its non-delegable warranty of seaworthiness to provide safe and adequate equipment for ingress and egress to its vessel, the RICK STEIRWALD.

That on or about January 21, 1998, plaintiff, **JERAMIE LATIOLAIS**, was a passenger aboard the RICK STEIRWALD which was owned and operated by EBI.

2.    **Brief Summary of Material Facts Claimed by Defendant: Elevating Boats, Inc.**

(1)    Factual Circumstances of Plaintiff's Accident:

On the date of plaintiff's alleged injury, January 21, 1999, plaintiff was performing wire line services for his employer, Perf-O-Log, Inc. Perf-O-Log is a drilling contractor hired by a non-party to the litigation, Texaco, to service an oil well field pursuant to a Master Work Agreement between Texaco and Perf-O-Log. EBI's exclusive engagement was to transport the wireline crew and its equipment to the well site and to provide a stationary work platform for the wireline crew. The lift liftboat hired was the *Rick Steirwald*.

On this date, plaintiff and two of his co-employees were engaged in a "plug back and perforation" procedure, whereby a depleted zone is isolated by the insertion of sand and cement into the well bore to cover the existing perforations. After isolation, the well tubing is then re-perforated at a higher level in order to restore production. The perforation procedure is performed by lowering a "gun" into the well bore which contains an explosive charge detonated by an electrical current. The explosion pierces the well tubing and allows hydrocarbons to flow into the tubing at a higher level than the isolated zone. Plaintiff's accident allegedly occurred at one of the wells in Texaco's Leeville field, located in a shallow inland waters.

EBI did not assume, by contract, custom, or otherwise, any responsibilities, duties, or any role, whatsoever, in the performance of the wireline services. EBI merely transported plaintiff and his co-employees to the well site, and, upon arriving at the site, elevated the work platform to a height directed by Perf-O-Log's employees. EBI neither exercised nor retained any discretion whatsoever in the elevation of the platform.

After elevating the lift boat as directed by plaintiff's employees, neither the captain of the vessel, nor his deck hand took any part in the wireline operation. The crane on the lift boat was operated exclusively by the Perf-O-Log wireline crew. At the time of plaintiff's alleged injury, EBI's vessel was in an elevated position adjacent to the Texaco well and was being used as a stationary work platform or staging area. The *Rick Steirwald* was equipped with a gangway as a means of ingress and egress onto and off of the vessel.

4

At the time of his injury, plaintiff was experienced in wireline operations having worked for his employer, Perf-O-Log, for nearly seven years, both as a "rigman" and a "hoistman." In wireline operations, a "rigman" is essentially a laborer or apprentice who, after learning the technique, may be promoted to a hoistman. Perf-O-Log's safety director recently testified in a deposition that a rigman is only promoted to hoistman after he acquires an expertise in the operations. The safety director stated further that an employee of seven years experienced in wireline operations should have gained a substantial amount of expertise in a plug back and perforations operations. Plaintiff has also acknowledged that, as an experienced wireline operator, plaintiff had previously encountered, on numerous occasions, the situation which he alleges caused his injury: a height differential between the elevated work platform and the deck or grating of the well.

Plaintiff knowingly and voluntarily chose to step down from the work platform onto the well by stepping onto a tire fastened to the vessel as a fender. At no time did plaintiff ask the captain of the EBI vessel or his deck hand for a ladder or any alternative means of egress from the work platform onto the well head. Similarly, plaintiff never brought to his employer's attention the alleged need for an alternative means of traversing from the work platform onto the well head during wireline operations. Neither the plaintiff nor his crew requested that the captain or the deck hand place the gangway between the well structure and the jack-up vessel. Plaintiff had actual and constructive knowledge of provisions in the Perf-O-Log employee safety handbook which required employees to report dangerous or hazardous conditions to the safety officers in the firm.

(2)    Plaintiff's Failure to Report a Job Related Injury:

Although plaintiff contends that he injured his back during the on January 21, 1999, wireline operations when he stepped from the work platform onto the well head, he failed to report any work related accident or injury until March 15, 1999. While plaintiff contends that he complained of back pain to his co-workers on the date of his alleged injury, one of his co-workers stated, emphatically, that plaintiff mentioned nothing to him of back pain nor anything about having suffered any injury on the job that day. Plaintiff did not bring his *condition* to the attention of his employer until approximately February 2, 1999, when he telephoned the safety director of Perf-O-Log, Harold Short, to advise him that he was unavailable to work. During this conversation, plaintiff mentioned nothing about a work-related injury. Plaintiff only advised Mr. Short that he was under the care of a physician for back pain.

In a second telephone conversation of February 9, 1999, plaintiff called Harold Short and advised that he was under the care of a doctor who was restricting plaintiff from work for two weeks and that the doctor had ordered an MRI as a

5

diagnostic test. During this conversation, plaintiff asked Mr. Short whether he should file his claim as a worker's compensation claim or as a short term disability claim. Short then explained to plaintiff that, if his condition was due to an on-the-job injury, he should file a worker's compensation claim, if not, Short explained, plaintiff should file a short term disability claim under his disability insurance policy. In that conversation, plaintiff did indicate whether he was injured on the job and did not intimate to Short how he intended to file his claim. However, on March 10, 1999, plaintiff filed a claim for short term disability benefits with American Bankers Life Insurance Company.

On March 15, 1999, plaintiff presented to the Perf-O-Log office and filed a worker's compensation claim alleging that he was injured on January 21, 1999. This is the first time plaintiff advised his employer that he was injured on the job, and it was the first time he made any reference to his pain symptoms manifesting on January 21, 1999. Mr. Short then contacted the safety director of Perf-O-Log's parent company, W. H. Energy Services--one Ernest Maggoire--who advised Mr. Short to fill out the injury report as a "re-injury." Mr. Short inferred that Mr. Maggoire gave this instruction because he was aware of plaintiff's prior on-the-job injuries, which included an incident in July of 1997, wherein plaintiff reported that he suffered a back injury while lifting heavy equipment. Plaintiff also complained to his employer of back pain symptoms in November of 1997, which he did not relate to a work accident. Given plaintiff's history of back complaints, and Short and Maggoire concluded that plaintiff's present back symptoms were attributable to his original July 1, 1997, lifting injury.

Plaintiff has attempted to explain away these unfavorable facts by contending that, when he went to Harold Short for advice on how to proceed with his claim, Short advised him to file his claim as a disability claim, rather than as a worker's compensation claim, because plaintiff had paid premiums for the disability policy and should put the policy to use. Mr. Short emphatically denies making any such recommendation to plaintiff. Mr. Short maintained, over the course of two depositions, that he only explained to plaintiff the distinction between a worker's compensation claim and a disability claim by advising plaintiff that he should file a worker's compensation claim if he was injured on the job, and that he should file a disability claim if his symptoms were not job related.

Plaintiff failed to relate his injuries to any work incident when he saw his general practitioner in January and February of 1999 for complaints of back pain. The doctor has confirmed that plaintiff gave no history of a work related injury.

6

3.    **Statement by Intervenor: Liberty Mutual Insurance Co.**

Intervenor, Liberty Mutual, avers that it was the state workers' compensation insurer of plaintiff, Mr. Jeramie Latiolais' employer, Perf-O-Log, Inc., on the date of Mr. Latiolais' accident. Liberty Mutual paid workers' compensation benefits ($36,349.69) and medical expenses ($16,427.99) to or on behalf of Mr. Latiolais totaling $52,807.68 at the time of this filing. Liberty Mutual maintains that it is subrogated to the interests of Perf-O-Log, Inc., Mr. Latiolais' employer, with respect to Mr. Latiolais' claim against Elevating Boats, Inc., and any recovery made by the plaintiff in this action and that it is further entitled to reimbursement by priority out of the proceeds of any settlement or judgment which may be reached in the proceedings, together with costs, attorney's fees and interest on all such benefits and expenses paid until reimbursed pursuant to L.S.A.-R.S. 23:1101, et seq. Liberty Mutual is also entitled to a credit on any amounts recovered by Mr. Latiolais from his claim against Elevating Boats, Inc., towards any alleged future compensation obligation to Mr. Latiolais, if any exists, Liberty Mutual further reserves the right to amend the amount of its intervention at the time of trial if any additional compensation and medical benefits are paid.

7.    **A single listing of all uncontested material facts:**

a.    **Jeramie Latiolais - Plaintiff**

.    That on January 21, 1999, Jeramie Latiolais was employed and working as a hoistman for Perf-O-Log, Inc., a wireline company.

2.    That on January 21, 1999, Jeramie Latiolais and his co-workers, Kevin Broussard and Bobby Maturin were performing wireline work on (Texaco) LL&E Well #108, near Leesville, Louisiana.

3.    That on January 21, 1999, Jeramie Latiolais and his crew were performing these work duties from the lift boat vessel, RICK STEIRWALD.

4.    That on January 21, 1999, Jeramie Latiolais and his crew were passengers on aborad the lift boat vessel, RICK STEIRWALD.

5.    That on January 21, 1999, the lift boat vessel, RICK STEIRWALD was owned and operated by defendant, Elevating Boats, Inc.

6.    That on January 21, 1999, the only equipment on board for ingress and egress to the RICK STEIRWALD as a 16 foot steel gangway.

7

. That on January 21, 1999, the RICK STEIRWALD was not equipped with a rope (jacobs) ladder or extension ladder.

8. That Jeramie Latiolais underwent a one level laminotomy and partial diskectomy lumbar fusion surgery at L4-5 by Dr. Robert Nicholson on June 3, 1999.

**b.** **Defendant, Elevating Boats, Inc.**

1. On the date of plaintiff's alleged injury, January 21, 1999, plaintiff was performing wire line services for his employer, Perf-O-Log, Inc. Perf-O-Log is a drilling contractor hired by a non-party to the litigation, Texaco, to service an oil well field pursuant to a Master Work Agreement between Texaco and Perf-O-Log.

2. After elevating the lift boat as directed by plaintiff's employees, neither the captain of the vessel, nor his deck hand took any part in the wireline operation. The crane on the lift boat was operated exclusively by the Perf-O-Log wireline crew. At the time of plaintiff's alleged injury, EBI's vessel was in an elevated position adjacent to the Texaco well and was being used as a stationary work platform or staging area. The *Rick Steirwald* was equipped with a gangway as a means of ingress and egress onto and off of the vessel.

3. The *Rick Steirwald* was not equipped with an extension ladder or a Jacob's ladder.

4. Plaintiff never reported the need for a ladder as a problem or safety hazard.

5. On March 10, 1999, plaintiff filed a claim for short term disability benefits with American Bankers Life Insurance Company.

6. On March 15, 1999, plaintiff presented to the Perf-O-Log office and filed a worker's compensation claim alleging that he was injured on January 21, 1999.

7. On the report of injury, plaintiff's employer classified the matter as a "re-injury."

**c.** **Liberty Mutual Insurance Company - Intervenor**

1. Liberty Mutual paid Louisiana state workers' compensation benefits, including compensation and medical expenses, to or on behalf of Mr. Jeramie Latiolais.

2. Liberty Mutual made payments in the amount of $36,349.69 in compensation benefits.

3. Liberty Mutual made payments in the amount of $16,427.99 in medical expenses.

4. Liberty Mutual reserves the right to update the amount of its Intervention at the time of trial.

8. **Contested issues of fact:**

a. **Plaintiff, Jeramie Latiolais**

1. Whether or not Jeramie Latiolais injured his back on January 21, 1999.

2. Whether or not Elevating Boats, Inc., was negligent for failing to provide Jeramie Latiolais with an adequate and safe means of ingress and egress to the lift boat vessel RICK STEIRWALD.

3. The height differential between the deck of the RICK STEIRWALD and the deck of the well platform.

4. The responsibilities and duties of the EBI crew on board the RICK STEIRWALD on January 21, 1999.

5. Whether EBI is liable to plaintiff under 33 U.S.C. §905(b) of the LWHCA and the General Maritime Law of the United States.

6. Any other issues listed by any other party or any issue employed in the factual context of this litigation and or implicit in defendants foregoing summary of material facts.

b. **Defendant, Elevating Boats, Inc.**

1. EBI's exclusive engagement was to transport the wireline crew and its equipment to the well site and to provide a stationary work platform for the wireline crew. The lift liftboat hired was the *Rick Steirwald*.

2. EBI did not assume, by contract, custom, or otherwise, any responsibilities, duties, or any role in the performance of the wireline services. EBI merely transported plaintiff and his co-employees to the well site, and, upon arriving at the site, elevated the work platform to a height directed by Perf-O-Log's employees.

9

3.    EBI neither exercised nor retained any discretion in the elevation of the platform.

4.    At no time did plaintiff ask the captain of the EBI vessel or his deck hand for a ladder or any alternative means of egress from the work platform onto the well head.

5.    Neither the plaintiff nor his crew requested that the captain or the deck hand place the gangway between the well structure and the jack-up vessel.

6.    Plaintiff never brought to his employer's attention the alleged need for an alternative means of traversing from the work platform onto the well head during wireline operations.

7.    Plaintiff had actual and constructive knowledge of provisions in the Perf-O-Log employee safety handbook which required employees to report dangerous or hazardous conditions to the safety officers in the firm.

8.    Plaintiff he failed to report any work related accident or injury until March 15, 1999.

9.    Plaintiff did not bring his *condition* to the attention of his employer until approximately February 2, 1999, when he telephoned the safety director of Perf-O-Log, to advise that he was unavailable to work.

10.   In a second telephone conversation of February 9, 1999, plaintiff called Harold Short and advised that he was under the care of a doctor who was restricting plaintiff from work for two weeks and that the doctor had ordered an MRI as a diagnostic test. During this conversation, plaintiff asked Mr. Short whether he should file his claim as a worker's compensation claim or as a short term disability claim. Short then explained to plaintiff that, if his condition was due to an on-the-job injury, he should file a worker's compensation claim, if not, Short explained, plaintiff should file a short term disability claim under his disability insurance policy. In that conversation, plaintiff did indicate whether he was injured on the job and did not intimate to Short how he intended to file his claim.

11.   Plaintiff failed to relate his injuries to any work incident when he saw his general practitioner in January and February of 1999 for complaints of back pain.

12.   This doctor has confirmed that plaintiff gave no history of a work related injury.

10

13. The height differential between the deck of the *Rick Steirwald* and the deck of the well platform.

14. All the factual assertions set forth in Defendant's Summary of Material Facts which are not included in the single listing of all uncontested material facts set forth in paragraph 6(b) above which are not included as uncontested material fact in paragraph 7.

15. Whether Elevating Boats, Inc., is owed any duty to plaintiff to supply an alternative means of ingress and egress under §905(b) of Longshore and Harbor Workers' Compensation Act, or any other applicable law.

16. The extent of plaintiff's contributory negligence.

17. Whether the plaintiff has complied with his duty to medicated his damages by attempting to return to some type of gainful employment since his alleged accident. If liability is found, what damages, if any, plaintiff is entitled to.

18. The extent of plaintiff's physical and vocational disability.

19. Any other issue listed by any other party or any issue implicit in the factual context of this litigation and or implicit in defendant's foregoing summary of material facts.

20. Fault of ꝓ's employer in a manner causally related to ꝓ's accident.

36   9. **Contested issues of law:**

a. **Plaintiff, Jeramie Latiolais**

1. Whether or not Elevating Boats, Inc., was negligent under 33 U.S.C. § 905(b) of the Longshore and Harbor Workers' Compensation Act and/or the General Maritime Law, in failing to provide Jeramie Latiolais with a safe and adequate means of ingress and egress on to the lift boat vessel RICK STEIRWALD.

2. Whether or not defendant, **ELEVATING BOATS, INC.,** was negligent under the General Maritime Law in failing to provide plaintiff and his crew with a adequate and safe means of ingress and egress to the lift boat vessel, RICK STEIRWALD, insofar as they failed to provide a rope (jacobs) ladder and/or extension ladder or other safe means of ingress and egress to the vessel in question.

11

       3.     Whether or not EBI owed a non-delegable duty to provide plaintiff with a seaworthy vessel.

**b.    Defendant, Elevating Boats, Inc.**

       1.     What duty, if any, was owed to plaintiff, under the facts presented.

       2.     Whether plaintiff was owed any duty under §905(b) of the LHWCA including, whether the LHWCA imposes a non-delegable duty, in the factual context presented, to supply an alternative means of ingress and egress to plaintiff who was conducting a specialized and technical wireline operation.

       3.     Whether any of the alleged breach of duty by EBI was a proximate cause of plaintiff's injury.

       4.     Any issue implicit in the foregoing issues of law.

10.  **EXHIBITS**

**a.    Plaintiff, Jeramie Latiolais may introduce the following exhibits at trial:**

       1.     Any and all accident reports, witness statements, reports of injury and/or any and all other documents prepared by any party, including but not limited to Perf-O-Log, Inc. and Harold Short, investigating the January 21, 1999 accident.

       2.     Any and all photographs and/or video tapes of the lift vessel RICK STEIRWALD, LL&E Well #108 and Perf-O-Log workover equipment in question;

       3.     Copies of any and all blueprints, schematic drawings, engineering drawings, correspondence, memorandum and/or any and all other written information, documents or other information relative to the construction of the lift vessel RICK STEIRWALD;

       4.     A copy of any and all documents and/or information generated and provided by any and all defendants or any other party in their investigation of the accident of January 21, 1999;

       5.     Exhibits or attachments to any deposition taken in this matter;

       6.     Income tax returns and W-2 forms of Plaintiff;

7.    Personal Earnings and Benefit Estimate Statement from the Social Security Administration;

8.    Any and all medical records and medical bills from all health care providers regarding the medical treatment of Plaintiff;

9.    U.S. Coast Guard Marine Safety Center Guidelines for Review of Liftboat General Arrangement Plans;

10.   U.S. Coast Guard Safety Alert, Gangplanks A Vital Area for Safety;

11.   U.S. Coast Guard Marine Safety Manual, Vol. II: Material Inspection;

12.   Expert report of Ted Deshotel;

13.   Expert report of Craig Brasseux;

14.   Expert report of Randy Rice, Ph.D.;

15.   All personnel records of plaintiff, Jeremy Latiolais of his employer, Perf-O-Log;

16.   Any disability claim forms filed by plaintiff, Jeremy Latiolais;

17.   Photographs of the jack-up vessel at issue in this litigation;

18.   All records, receipts, inventory sheets and invoices reflecting equipment owned, rented, leased or otherwise provided by Perf-O-Log to its employees, wireline operations on or about January 21, 1999;

19.   All employee policy manuals, operations manuals, employee safety policies, injury reporting policies, or any other manual, guide, policies or procedures of Perf-O-Log regarding safety, injury prevention reporting of employee injuries;

20.   Any and all payroll records relative to plaintiff's employment with Perf-O-Log, or any other prior employer;

21.   The charter parties or any other contracts or agreements between Elevating Boats, Inc., Texaco, and/or Perf-O-Log;

22.   Any and all employment contracts, agreements, or other records of the terms and conditions of plaintiff's employment with Perf-O-Log;

13

23.    Any and all charter parties, contracts, or other records of the terms and conditions of plaintiff's employment with Perf-O-Log.

24.    Any and all of plaintiff's attendance records, personnel records, performance evaluations, reports of injury or any other records of plaintiff's employer, Perf-O-Log or any prior or subsequent employer of plaintiff;

25.    Any and all Safety Manuals, and the "RICK STEIRWALD" Elevator Operations Manual of Elevating Boats, Inc;

26.    Safety Manuals of Perf-O-Log;

27.    Any correspondence from Harold Short and/or Perf-O-Log to Liberty Mutual Insurance Company;

28.    Any notes, logs or other records of Harold Short of Perf-O-Log;

29.    All records of plaintiff's prior or subsequent injuries including, without limitation of the following records.

a.    All records of a 7/1/96 injury to plaintiff;

b.    All records of a 7/1/97 injury to plaintiff;

c.    All records of plaintiff's report of law back pain on or about 11/3/97.

30.    Any and all depositions of any witness taken in this matter;

31.    Any and all documents received, prepared or generated by any party to this lawsuit.

32.    March 15, 1999, handwritten statement of Jeramie Latiolais;

33.    March 16, 1999, handwritten statement of Kevin Broussard.;

34.    Any exhibits listed by any other party;

c.    **Defendant, Elevating Boats, Inc.**

1.    Depositions of expert witnesses, including Dr. Robert Steiner, Dr. Deidre Stelly, Cornielus Gorman, Kenneth J. Boudreaux, Ph.D; and Paul Fontana or another occupational therapist, at the Fontana Center. (As urged by the court

14

during the status conference of April 17, 2000, defendant will attempt to obtain stipulations from plaintiff's counsel to submit expert reports and medical depositions in lieu of live testimony of these witnesses.)

2.   Reports of all expert witnesses, including Dr. Robert Steiner, Cornielus Gorman, Kenneth J. Boudreaux, Ph.D; and Paul Fontana or another occupational therapist, at the Fontana Center.

3.   Any medical records, charts, narrative, summary, diagnostic tests, or any other record of any treatment, evaluation, examination, or testing of plaintiff.

4.   All medical records charts, narrative, correspondence, summaries, diagnostic tests, or any other record of any treatment, evaluation, examination, or testing of plaintiff generated by Dr. Deidre Stelly.

5.   All personnel records of plaintiff, Jeremy Latiolais, of his employer, Perf-O-Log.

6.   All memoranda of plaintiff's employer, Perf-O-Log, regarding plaintiff's work records, reports of injuries or conditions , including without limitation all records or memorandums prepared by or on behalf of Harold Short.

7.   Any disability claim forms filed by Plaintiff, Jeremy Latiolais.

8.   Photographs of the jack-up vessel at issue is the litigation.

9.   Photographs of well head at issue in this litigation  and/or photographs of a similar well head.

10.   All records, receipts, inventory sheets and invoices reflecting equipment owned, rented, leased, or otherwise provided by Perf-O-Log to its employees, or otherwise available to its employers, including any equipment leased or rented by Perf-O-Log.

11.   All records of EBI relating to the lift boat Rick Steirwald, including operations manuals, Coast Guard Certifications.

12.   Any Coast Guard Regulations, guidelines or other publications, or other rules, regulations, authoritative text, any text governing marine safety, vessel operations, or drilling safety including without limitation any International Association Drilling Contractors Guidelines.

15

13.    All employee policy manuals, operations manuals, employee safety policies, injury reporting policies, or any other manual, guide, policies or procedures of Perf-O-log regarding safety, injury prevention, or repoting of dangerous conditions.

14.    Any and all payroll records relative to plaintiff's employment with Perf-O-Log, or any other prior employer.

15.    The charter parties or any other contracts or agreements between Texaco, and/or Perf-O-Log.

16.    The master work agreement or any other contracts or agreements between Texaco, and/or Perf-O-Log.

17.    Any and all employment contracts, agreements, or other records of the terms and conditions of plaintiff's employment with Perf-O-Log.

18.    Any and all charter parties, contracts, or other agreements between Perf-O-Log and Texaco.

19.    Any and all of plaintiff's attendance records, personnel records, performance evaluations, reports of injury or any other records of plaintiff's employer, Perf-O-Log or any prior or subsequent employer of plaintiff.

20.    Any and all records contained in the workers' compensation claim file of Jeremy Latiolais of Liberty Mutual Insurance Company.

21.    Any and all records contained in any disability claim file of Jeremy Latiolais.

22.    Safety Manuals or other operation manuals of Elevating Boats, Inc.

23.    Safety Manuals or employee manuals of Perf-O-Log.

24.    Any correspondence from Harold Short and/or Perf-O-Log to Liberty Mutual Insurance Company.

25.    Any notes, logs or other records of Harold Short of Perf-O-Log.

26.    All records of plaintiff's prior or subsequent injuries including, without limitation of the following records.

27.    All records of a 7/1/96 injury to plaintiff;

28.    All records of a 7/1/97 injury to plaintiff;

16

29.   All records of plaintiff's report of low back pain on or about 11/3/97.

30.   All records of Dr. Deidre Stelly regarding plaintiff's treatment, examination, evaluation, or diagnostic testing.

31.   All records of Dr. Bertuccinni regarding plaintiff's treatment, examination, evaluation, or diagnostic testing.

32.   All records of plaintiff's claim for disability benefits.

33.   All records of plaintiff's federal income tax returns.

34.   Letter of Dr. Deidre Stelly to Liberty Mutual Claims Adjuster

35.   All records of vocational assessments of plaintiff by or on behalf of Perf-O-Log's workers' compensation carrier, Liberty Mutual Insurance Company.

36.   The transcript of any hearing, depositions, or other proceeding in any workers' compensation or LHWCA proceeding.

37.   Deposition of Jeramie Latiolais in any OWC or LHWCA proceeding.

38.   Deposition of Kevin Broussard in OWC or LHWCA proceeding.

39.   Deposition of Dr. Deidre Stelly in any OWC proceeding.

40.   Claim forms filed by Jeramie Latiolais for compensation or disability benefits.

41.   Any charts, graphics, medicals, models or other demonstrative evidence which may be introduced into evidence, used in opening statement, or closing argument, as demonstrative aids.

42.   Any raw data used or relied upon by any expert witness who has testified for either party.

43.   A scale model of a jack-up vessel similar to the vessel involved in plaintiff's alleged injury.

44.   Any document requested or produced by plaintiff in discovery or pursuant to the disclosures provision of the Federal Rules of Civil Procedure.

45.   Any applicable accident prevention guidelines by IADC.

46. All supplemental claim forms filed by plaintiff, Jeramie Latiolais for any workers' compensation or disability benefits.

47. All pleadings correspondence or discovery filed in the OWC or LHWCA proceedings.

48. All accident or incident reports of any kind involving plaintiff, Jeramie Latiolais.

49. Records of David V. Maraist, M.D. Radiologist.

50. Deposition of Dr. Deidre Stelly taken in the OWC or LHWCA proceeding.

51. The computer generated or other record of benefits received by plaintiff Jeramie Latiolais from Liberty Mutual Insurance Company or any other insurance carrier.

52. All logs of EBI regarding the perforation project at issue in the litigation.

53. All Social Security Records of plaintiff.

54. Report of injury filed with OWC or LHWCA including any Form LS-202.

55. Records and Diagnostic tests of Robert Nicholson, M.D.

56. Any and all Mary Carter, "Catch Back" or other agreement of any kind between plaintiff and Liberty Mutual Insurance Company and/or Perf-O-Log Inc.

57. All claims forms filed by plaintiff with American Bankers Life Assurance Company.

58. A copy of the transcribed typed recorded statement given by Jeramie Latiolais relative to the facts and circumstances surrounding his accident of January 21, 1999.

59. Any document produced by defendant during the course of discovery.

60. Any document listed by plaintiff or intervenor.

61. Any relevant learned treatise.

c.    **Intervenor, Liberty Mutual Insurance Group, may introduce the following exhibits at trial, but intends to obtain the stipulation of the parties to the intervention in advance of trial:**

1.    Statement, printout, or other listing of amounts paid by Liberty Mutual for compensation and medical benefits pursuant to the Louisiana State Workers' Compensation Act to or on behalf of Mr. Jeramie Latiolais.

2.    Any and all canceled checks depicting payments made by Liberty Mutual to health care providers pursuant to the Louisiana State Workers' Compensation Act to or on behalf of Mr. Jeramie Latiolais.

3.    Any and all canceled checks depicting payments of benefits made by Liberty Mutual pursuant to the Louisiana State Workers' Compensation Act to or on behalf of Mr. Jeramie Latiolais.

4.    Joint stipulation concerning intervention.

5.    Any exhibit listed or used by any party.

11.    **DEPOSITION TESTIMONY:**

a.    **In lieu of live testimony, plaintiff, Jeramie Latiolais will introduce the deposition testimony of the following:**

1.    Plaintiff, Jeramie Latiolais intends to offer into evidence at trial, a copy of the trial deposition of Dr. Robert Nicholson, and may introduce at trial, the depositions of Harold Short and Robert Williams.

b.    **In lieu of live testimony, defendant, Elevating Boats, Inc. will introduce the deposition testimony of the following:**

1.    EBI intends to introduced in lieu or live testimony the deposition of Dr. Diedre Stelly and possibly the deposition of Dr. Robert Steiner.

12.    **CHARTS, GRAPHS, ETC.:**

a.    **Plaintiff, Jeramie Latiolais**

1.    Plaintiff, Jeramie Latiolais may use in his opening statement or closing argument, a schematic diagram or similar drawing reflecting the lift vessel

19

RICK STEIRWALD, (Texaco) LL&E Well #108 and Perf-O-Log, Inc., wireline equipment, dimensions, heights, etc.

**b.    Defendant, Elevating Boats, Inc.**

1.    At this time, EBI does not intend to use any graphs or charts, other than possibly a time line graph.

13.  **WITNESSES:**

**a.    Plaintiff, Jeramie Latiolais may call the following witnesses at trial:**

1.    Jeramie Latiolais, 2061 Coteau Rodaire Hwy., Arnaudville, Louisiana 70512. Will testify regarding the facts and circumstances surrounding the accident and his injuries on January 21, 1999.

2.    Michelle Latiolais, 2061 Coteau Rodaire Hwy., Arnaudville, Louisiana 70512. Will testify as to her knowledge of the facts and circumstances of the accident and injuries plaintiff, Jeramie Latiolais suffered on January 21, 1999, as well as plaintiff physical limitations prior to and following his accident of January 21, 1999;

3.    Katie Thibodeaux, 3372 Grand Point Hwy., Breaux Bridge, Louisiana, 70517, plaintiff's mother, who will testify regarding plaintiff's physical limitations prior to and following his accident of January 21, 1999;

4.    Carroll Latiolais, 2061 Coteau Rodaire Hwy, Arnaudville, Louisiana, 70512, plaintiff's father, who will testify regarding plaintiff's physical limitations prior to and following his accident of January 21, 1999;

5.    Christine Latiolais, 3372 Grand Point Hwy. Breaux Bridge, Louisiana, 70517, plaintiff's sister, who will testify regarding plaintiff's physical limitations prior to and following his accident of January 21, 1999;

6.    Leonard Champagne, 1052 Section 28 Road, St. Martinville, Louisiana, 70582, plaintiff's best friend, who will testify regarding plaintiff's physical limitations prior to and following his accident of January 21, 1999;

7.    Kevin Broussard, 9710 LA. Highway 239, Abbeville, Louisiana, 70510, an employee of Perf-O-Log, Inc., and co-employee of plaintiff, who will testify regarding the facts and circumstances surrounding the accident of January 21, 1999 and plaintiff's injuries.

8.    Harold Short, 111 Patricia Ann Lane, Lafayette, Louisiana, 70508, an employee of Perf-O-Log, Inc., who will testify as to his knowledge of the facts and circumstances surrounding the plaintiff's accident on January 21, 1999.

9.    Robert Williams, 216 East Canal Street, Picayune, Mississippi, 39466, the boat captain for RICK STEIRWALD, who will testify regarding the vessels equipment and crew responsibility;

10.    John P. Blake, EBI deck hand for RICK STEIRWALD, who will testify regarding the vessels equipment and crews responsibility;

11.    Dr. Robert Nicholson, 7707 Old Hammond Hwy. Suite A., Baton Rouge, Louisiana, plaintiff's treating physician who will testify regarding his medical treatment of plaintiff for his injuries of January 21, 1999;

12.    Dr. Thomas V. Bertuccini, 601 W. St. Mary Boulevard, Suite 306, Lafayette, Louisiana, 70503, who will testify regarding his medical treatment of plaintiff for his injuries of January 21, 1999;

13.    Dr. Diedre Stelly, who will testify regarding her medical treatment of plaintiff for his injuries of January 21, 1999;

14.    Dr. Debra Durham, 1027 A Martin St., Parks, Louisiana 70582, who will testify regarding his medical treatment of plaintiff for his injuries of January 21, 1999;

15.    A representative of Physical Therapy Clinic of Lafayette, P.O. Box 52021, Lafayette, Louisiana, 70505, who will testify regarding his medical treatment of plaintiff for his injuries of January 21, 1999;

16.    Randy Rice, Ph.D., 7048 Moniteau Court, Baton Rouge, Louisiana 70809-1161, plaintiff's expert economist, who will testify regarding plaintiff's future lost wages;

17.    Ted Deshotel, 505 Yvette Marie Drive, Lafayette, Louisiana 70508, plaintiff's vocational rehabilitation expert, who will testify as to plaintiff's current and future employability;

18.    C. Dawn Frederick, 100 Ames Blvd, Suite 236, Lafayette, Louisiana 70508, Liberty Mutual vocational rehabilitation consultant, who will testify as to plaintiff's current and future employability;

21

19.    Craig Brasseux, 331 Rena Drive, Lafayette, Louisiana, 70503, plaintiff's safety expert, who will testify regarding the safeness of the lift boat vessel, RICK STEIRWALD, and the height of the lift boat vessel about well #108, based on the equipment in use on January 21, 1999, as well as his measurements of the lift boat vessel, crane, gangway, bumper tires, well head and cribbing;

20.    A representative of Liberty Mutual Insurance Company, P.O. Box 40460, Houston, Texas 77240-0460, or other representative of Liberty Mutual regarding the payment of compensation and medical benefits pursuant to the Louisiana State Workers' Compensation Act to or on behalf of Mr. Jeramie Latiolais.;

**b.    Defendant, Elevating Boats**

Will Call:

1.    Robert "Bobby" Maturin
Employee of Perf-O-Log

Re:    Facts and circumstances of plaintiff's alleged accident of January 21, 1999 and equipment supplied by Perf-O-Log.

2    Kevin Broussard
Employee of Perf-O-Log

Re:    Facts and circumstances of plaintiff's alleged accident of January 21, 1999 and equipment supplied by Perf-O-Log..

3.    Harold Short
Safety Coordinator for Perf-O-Log

Re:    Facts and circumstances of plaintiff's alleged accident and plaintiff's employment records and plaintiff's report of injury.

4.    Robert Steiner, M.D.

Re:    Independent Medical Examination of Plaintiff.

5.    Cornelius E. Gorman, Ph.D

Re:    Vocational evaluation of plaintiff.

22

6.    Paul Fontana, or another occupational therapist at the Fontana Center.

    Re:    Plaintiff's functional capacity evaluation to be conduced upon order compelling FCE by the court.

7.    Lynn Dean
Corporate Representative of EBI.

    Re:    Lift boat operations, lift boat manuals and equipment, safety standards, agreement of contracts between any of the parties involved in the wireline activities, relationships between the parties, industry practices and customs.

8.    Doug Dean
Corporate Representative of EBI.

    Re:    Lift boat operations, lift boat manuals and equipment, safety standards, agreement of contracts between any of the parties involved in the wireline activities, relationships between the parties, industry practices and customs.

9.    Captain Robert Williams
Captain of the *Rick Steirwald*

    Re:    Facts, lift boat operations, standard equipment, relationships between the parties, industry practices and customs.

10.   Kenneth J. Boudreaux, Ph.D.
Defendant's Expert Economist

    Re:    Economic Evaluation.

May Call Witnesses:

1.    Any healthcare professional who has ever treated plaintiff for any physical or mental condition.

2.    Liberty Mutual Claims Adjuster assigned to Plaintiff's Worker's Compensation Claim.

3.    Any claims representative who handled plaintiff's claim for disability benefits or worker's compensation benefits.

4.    Bill Bouziden
       President of Perf-O-Log.

5.    Any witness listed or called by plaintiff.

6.    Any impeachment witness whose identity need not be disclosed by defendant.

7.    Any witness necessary to lay a foundation for any exhibit offered as evidence
       by defendant.

8.    Any witness whose identity is presently unknown to defendant but may be
       revealed as discovery proceeds.

9.    John Blake
       Former Deck Hand for EBI

10.   Ernest Maggoire
       W. H. Energy Services, Lafayette

       Re:    Facts and circumstances regarding plaintiff's injury report.

11.   Texaco Representative

       Re:    Master Work Agreement and relationship between Perf-O-Log,
              Texaco and EBI.

c.    **Intervenor, Liberty Mutual, may call the following witnesses at trial, but
      intends to obtain the stipulation of the parties to the intervention in advance of
      trial.**

      1.    Ms. Alma Balleza, P.O. Box 40460, Houston, Texas 77240-0460, or other
            representative of Liberty Mutual regarding the payment of compensation and
            medical benefits pursuant to the Louisiana State Workers' Compensation Act
            to or on behalf of Mr. Jeramie Latiolais.

      2.    Any and all witnesses listed or called by any other party.

**Statement Indicating Jury or Non Jury:**

This matter is currently scheduled as a non jury trial for January 8, 2001.

**The Issue of Liability** _____ **(will or will not) be tried separately from that of quantum.**

**Statement Describing other matters:**

None anticipated

**Trial shall commence on** January 8, 2001 at 9:00 a.m.  It is estimated that it will take approximately two (2) days to try this case.

**This pretrial order has been formulated after conference at which counsel for the respective parties have appeared in person.  Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing. Hereafter, this order will control the course of the trial and may not be amended except by the consent of the parties and the Court, or by order of the Court to prevent manifest injustice.**

**Possibility of Settlement of this case was considered at a Settlement Conference scheduled with Magistrate Lance Africk on Thursday, November 30, 2000 at 2:00 p.m. Settlement negotiation were unsuccessful.**

Signed this *4th* day of *December*, 2000, at New Orleans, Louisiana.

DATE: *12/4/00*

APPROVED:

**JOSEPH F. GAAR, JR.** (16927)
Attorney for plaintiff,
JERAMIE LATIOLAIS
P.O. Box 2053
Lafayette, Louisiana 70502
(337) 233-3185

DATE: *12/4/00*

APPROVED:

**LAURENCE E. BEST (3012)**
**PETER S. KOEPPEL (1465)**
**W. BARTLETT ARY (17909)**
Attorney for defendant,
ELEVATING BOATS, INC.
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
(504) 598-1000

25

DATE: _12/4/00_                    APPROVED: _____

**KAYE N. COURINGTON** (18582)
**SCOTT B. KIEFER** (18980)
Attorney for Intervenor,
LIBERTY MUTUAL INSURANCE GROUP
322 Lafayette Street
New Orleans, Louisiana 70130
(504) 524-5566

**UNITED STATES DISTRICT JUDGE**

26