RECEIVED
DEC 28 2000
CHAMBERS OF
U.S. DISTRICT JUDGE
ELDON E. FALLON

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
FILED JAN 5 2001
LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JERAMIE LATIOLAIS | * | DOCKET NO. 00-0085 (L) (3) |
| | * | |
| VERSUS | * | JUDGE ELDON E. FALLON |
| | * | |
| ELEVATING BOATS, INC. | * | MAGISTRATE LANCE M. AFRICK |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

## MOTION IN LIMINE

Defendant, Elevating Boats, Inc., moves this court in *limine* to exclude the testimony of plaintiff's putative expert witness under Federal Rules of Evidence 702. Specifically, plaintiff's putative expert witness, Craig Brasseux is unqualified to give opinion testimony as he lacks any sufficient education, training, or other specialized knowledge in the relevant discipline of marine safety, or in any other related discipline.

Further, defendant, EBI, moves to exclude any opinion testimony by Mr. Brasseux on grounds that the proposed testimony fails the reliability and relevance prerequisites established by the Supreme Court and in *Daubert v. Merrell Dial Pharmaceuticals*, 509 U.S. 579 (1993) and *Kumho Tire Company, Ltd. v. Carmichael*, 199 W.L. 152455 U.S. (March 23, 1999). Specifically, the proposed opinion testimony, as revealed in the expert witness report and the expert's deposition, lacks a sufficient indicia of reliability.

The proposed opinion testimony also fails the relevancy prerequisite of Rule 702, because, *inter alia*, Mr. Brasseux's opinion is based on Coast Guard Regulations inapplicable to the facts at bar. Specifically, the cited regulations apply to means of "means of escape " from an elevating vessels when used as a means of transport and not when used as a stationary work platform. Accordingly, the regulations and the testimony relying upon the regulations have no relevance to the issues of reasonable ingress and egress from a stationary work platform under non-emergency conditions presented in this litigation. Similarly, the balance of the authorities cited by plaintiff have no application to on the facts presented.

For the foregoing reasons, which are further developed in the accompanying memorandum of law filed contemporaneously herewith, defendants, Elevating Boats, Inc., calls upon this Court to perform its gatekeeping function of excluding unreliable and irrelevant testimony by an imminently unqualified witness.

Respectfully submitted,

BEST KOEPPEL

_____
LAURENCE E. BEST (#3012)
PETER S. KOEPPEL (#1465)
W. BARTLETT ARY (#17909)
Pan American Life Center
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
Telephone:     (504) 598-1000
Telecopier:    (504) 524-1024

Attorneys for Defendant, Elevating Boats, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been forwarded to all known counsel of record by depositing same in the United States Mail, postage prepaid and properly addressed.

New Orleans, Louisiana, this 28 day of December, 2000.

_____

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JERAMIE LATIOLAIS** | * | **DOCKET NO. 00-0085 (L) (3)** |
| | * | |
| **VERSUS** | * | **JUDGE ELDON E. FALLON** |
| | * | |
| **ELEVATING BOATS, INC.** | * | **MAGISTRATE LANCE M. AFRICK** |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM IN SUPPORT OF MOTION IN LIMINE

**MAY IT PLEASE THE COURT:**

Defendant, Elevating Boats, Inc. ("EBI") calls upon this Court to exercise its gatekeeping role under Rule 702 of the Federal Rules of Evidence by examining the proposed opinion testimony by plaintiff's putative expert, Mr. Craig Brasseux, against the standards for accessing the admissibility of testimony based on scientific, technical, or other specialized knowledge under *Daubert v. Merrell Dial Pharmaceuticals*, 509 U.S. 579 (1993); *Kumho Tire Company, Ltd. v. Carmichael*, 1999 W.L. 152455 U.S. (March 23, 1999). Defendant also moves the exclusion of any opinion testimony by Mr. Brasseux on grounds that Mr. Brasseux is unqualified under Rule 702 to give expert opinion testimony.

**I.   CRAIG BRASSEUX IS NOT QUALIFIED TO TESTIFY IN THE RELEVANT DISCIPLINE OF MARINE SAFETY.**

Mr. Brasseux admitted in his deposition that he holds no degree and has no certification in any safety-related discipline; has never testified in any case as an expert witness; he has never been

retained as an expert witness in any capacity; he has never taught marine safety; conducted and any studies or experiments in the field of marine safety, and that he does not belong to any professional associations of safety engineer. (See Mr. Brasseux's Deposition, page ____). A closer look at Mr. Brasseaux's experience and training reveal that he is not qualified under Rule 702 to give opinion testimony.

  **A. Mr. Brasseux is unqualified to testify as an expert by virtue of any professional practice or practical experience.**

Plaintiff's work experience in the offshore service industry fails to qualify him as an expert in the relevant discipline in marine safety or any related discipline, because he has no substantial training or experience applying marine safety standards. Even when plaintiff worked in the capacity as a safety director, he did not teach or administer any training. (p. 16). Moreover, Mr. Brassesux cites no substantial experience applying marine safety standards, and no related training or experience in drafting or creating company policies regarding the use of ladders or gangways or walkways or stairways. (See Mr. Brasseux's depo. pgs 37-38). Mr. Brasseux's attempts to bolster his thin record of experience in Marine Safety with such contentions as: "I was always kind of leaning toward trying to do things in a safer way than a lot of people care to," are unavailing. (pgs. 14, 15). His work record is nearly devoid of relevant experience and training.

  Mr. Brasseux stated that he holds no vessel operator's license and that he has no experience operating lift boat vessels or any other commercial vessels. (See Mr. Brasseux's depo. pgs. 52-53). Regarding Mr. Brasseux's experience with lift boats, he testified that he has only been aboard a lift boat on "one or two occasions." (p. 9). Regarding Mr. Brasseux familiarity with lift boats, he stated only that he was "pretty familiar with them." (p. 59). When asked to cite standards or regulations

applicable to the elevation of a lift boat, he responded by stating only: that "I don't know exactly. I just going to guess and say they can probably jack-up to about eighty percent of that height, give or take a little bit." When asked about any other standards that applied to the elevating procedure, Mr. Brasseux made vague reference to "wind velocity requirements" and exposed a glaring lack of familiarity with lift-boat standards. Regarding his familiarity with EBI's operation policy, Mr. Brasseux admitted that he only "glanced at their safety manual this afternoon" at a lunch break before his deposition. (pp. 61-62).

### B.  Plaintiff is not qualified as an expert in the field of Marine Safety by virtue of any education or training.

Mr. Brasseux has no degree and no certification as a Certified Safety Professional and no certification in any specific safety field, and he belongs to no professional associations. ( pp. 5, 17). While their may be no recognized certification in the specific disciplines of marine safety or drilling safety, Mr. Brasseux has related no specific expertise in either field. ( pp. 47-48). When asked specifically about societies or organizations of drilling safety professional, Mr. Brasseux admitted that he doesn't "focus too much on drilling." (p. 49).

The only certification achieved by Mr. Brasseux was a Petroleum Education Counsel designation recognizing that he had completed a Petroleum Education Counsel course on basic safety. Mr. Brassuex's characterized the training as follows:

> just very basic stuff...get a good night rest...drive carefully...don't carry your fishing pole straight up and stick it in the roader blades of a helicopter...just very basic common sense stuff.

Similarly, Mr. Brasseux's exposure to safety training in the field of "shipyard confined spaces," such as barge holds, is irrelevant to the marine safety issues presented in the case sub judice, as his experiences involved gas detection and safe entry into vessel compartments. ( pp. 30-34).

When asked to describe what specific training or responsibility for training others that Mr. Brasseux had in safe ingress and egress from docks to barges or between barges, Mr. Brasseux stated only that "we were very big on that." When Mr. Brasseux was asked, specifically, how he trained employees to access barges, he stated that merely that there was a "company policy of just, you know, use of ladders instead of standing on a five gallon bucket or a fifty-five gallon drum." (p. 35-36).

When asked to review this specific training cited by Mr. Brasseux in his *curriculum vitae*-- which listed only a few brief seminars, none of which offered any accreditation--Mr. Brasseux cited no relevant training that would posses him of sufficient specialized knowledge to offer reliable expert opinion testimony in the case at bar. Mr. Brasser described the extent of his training in ingress/egress issues as: "just make sure you have got a good means of ingress and egress."

When asked to define his expertise, Mr. Brasseux declined to describe himself as an expert preferring the term "specialist." Mr. Brasseux stated that he considered himself a specialist in "general safety, some marine issues,...Not all of them, but some." When asked to identify the particular marine safety issues he considered himself a "specialist," Mr. Brasseux stated "just general safety aboard vessel, ingress, egress, since that is what we are talking about."

4

### C.  The Court's Gatekeeping Function under Rule 702 Compels the Court to Disqualify Mr. Brasser as an Expert in Any Related Field.

The Fifth Circuit has affirmed the District Courts' gatekeeping responsibility to refusing to allow the opinion testimony of putative experts who are unable to demonstrate that they are their qualified, by virtue of their training, experience or specialized knowledge to give opinion testimony under Federal Rule of Evidence 702. For example, in *Wilson v. Woods*, 163 F.3rd 935 (5th Cir. 1999), the Fifth Circuit affirmed the District Courts refusal to qualify a mechanical engineer as an accident reconstructionist. The ruling resulted in a jury verdict for the defendant. Although the proffered expert was a mechanical engineer and had background in teaching and consulting in fire reconstruction and investigation, he had no degree or certification in the discipline in which he was tendered: accident reconstruction. Specifically, the proffered expert had never taught any accident reconstruction courses and, although he had testified in various cases, at least one court had refuse to qualify him as an expert in vehicle accident reconstruction, on grounds of his lack of expertise. The defendants in *Wilson* also established that the proffered expert had never conducted any studies or experiments in the field of accident reconstruction, and was otherwise unable to show that his training or experience as a mechanical engineer exceeded that of other mechanical engineers, by incorporating discipline of accident reconstruction. In affirming the exclusion of the testimony, the Fifth Circuit cited the record which revealed "significant deficiency in [the expert's] experience and professional training, leading in ineluctably to the impression that his expertise in accident reconstruction was no greater than any other individual with a scientific background." (*Id.* at 938).

Mr. Brasseux is far less qualified than the expert which the court refused to qualify in *Wilson v. Woods.* Specifically, Mr. Brasseux has no degree in any field, has no experience teaching or

consulting in the relevant discipline of marine safety and/or drilling safety, no certification in either marine safety or drilling safety, and he has never has never taught a marine safety or drilling safety course. Additionally, Mr. Brasseux has never before been qualified to testify as an expert in the field of marine safety or in the field of drilling safety. In sum, Mr. Brassuex has related no expertise by virtue of any training, education, or experience in the field of marine safety, drilling safety or applying any relevant safety standards to the issue presented herein: reasonably safe means of ingress and egress from stationary work platforms.

## II.    MR. BRASSEUX'S PROFFERED OPINION TESTIMONY LACKS ANY INDICIA OF RELIABILITY.

The United States Supreme Court in *Kumho Tire Co., Ltd. v. Carmichael*, 1999 W.L. 152455 U.S. (1999) held that the trial court's "gate keeping" function set forth in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) extends, not only to testimony based on "scientific" knowledge, but also the testimony based on "technical" and "other specialized" knowledge. Specifically, the court found that there was no relevant distinction in FRE 702 between "scientific" knowledge and "technical" or "other specialized" knowledge. The court reasoned that Rule 702 "makes clear that any such knowledge might become the subject of expert testimony." Because the word "knowledge" establishes an overarching standard of evidentiary reliability, Rule 702 requires a threshold of reliability for all expert testimony, "scientific," "technical," or "other[wise] specialized" in nature. Further, the Court affirmed that a valid connection to the issue is a precondition to all admissibility, and where the testimony's factual basis, data, principals, methods, or application are called into question, a trial court must inquire whether the testimony has a reliable basis in the knowledge and experience of the relevant discipline. The Court in *Kumho Tire*

6

emphasized the importance of the trial court's gat keeping role under Rule 702 by explaining that the ultimate objective must be to ensure the reliability and relevance of the testimony. Thus, *Kumho Tire* and *Daubert* require this Court to make certain that a proposed expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.

> 1. Brasseux's opinion that an extension ladder of Jacob's ladder was required on the *RICK* STEIRWALD lacks the requisite indicia of reliability.

Applying the *Daubert* factors to the proffered testimony of Mr. Brasseux reveals that the proposed testimony does not bear the necessary indicia of intellectual rigor required by *Daubert*, *Kumhotire*, and their Fifth Circuit progeny. Specifically, Mr. Brasseux's proffered opinion testimony--that an extension ladder of Jacob's ladder was required on the *RICK* STEIRWALD–lacks any of the four indicia of reliability set forth in *Daubert* measure the integrity of a particular scientific or technical theory. Specifically, Mr. Brasseux failed to cite any instances of testing, peer review, error rates of his theory, or any indication that his theory was acceptable in the relevant technical community (i.e. marine safety) community to establish the reliability of his theory that an auxiliary ladder was required.

The only support which Mr. Brasseux cited in his deposition for his theory was the literature published by the Coast Guard Marine Safety Center. (See Exhibits 3-5 attached to Brasseux's deposition). Specifically, Mr. Brasseux cited in support of his opinion the "means of escape provisions" and Subchapter I and Subchapter L of the Marine Safety Center Guidelines for Review of Liftboat General Arrangement Plans. (Exhibit 3). Mr. Brasseux cited no support for his theory that the provisions cited in Exhibit 3 applied to the liftboat when it was being used as a stationary

work platform. Mr. Brasseux stated only that, in his opinion, the risks encountered by persons aboard a vessel are the same or greater as those faced by worker's aboard an elevated platform. Also offered in support of his contentions his gratuitous and entirely subjective opinion that: "I am not too comfortable on liftboats period. Just, I don't like them". (pp 66). Mr. Brasseux also opined that the risks addressed by the escape provision in Exhibit 3 were no different when the vessel was being used as a transport vessel from the context of the vessel's use as a stationary work platform. In sum, Mr. Brasseux cited no authority for his opinion that the means of escape provisions apply in both the marine vessel transport context and the context of the liftboat being used as a stationary work platform. ( 69, 70).

When asked to address the disclaimer provided in the guidelines which states "these guidelines are not intended to substitute or replace laws, regulations, or other policy documents", Mr. Brasseux stated that, "I think if you would talk to a coast guard inspector, I'm pretty sure he would lean towards following these guidelines." On the basis of such sheer speculation, which exalts a guideline to the status of an absolute standard, Mr. Brasseux takes another unfounded leap by opining that a vessel that did not meet the guidelines would not warrant certification by the Coast Guard. (72). (It is undisputed that the *Rick Steirwald* was certified by the Coast Guard). Mr. Brasseux has never sought any peer review or review by Coast Guard officials of his opinion that either the guidelines are absolute standards, notwithstanding the proviso, or that the means of escape provision in the guidelines apply in the relevant context of the liftboat used as a stationary work platform in a non- emergency context. Further, Mr. Brasseux ( admitted that he has no personal knowledge of any vessel being denied certification because of failure to meet the guidelines cited in Exhibit 3. (pp72-74). Indeed, Mr. Brasseux could not even state whether Subchapter I or

8

Subchapter L of the guidelines cited as a basis for his opinion would apply to the vessel at issue, the *RICK STEIRWALD*.

The second document cited as support for Mr. Brasseux's opinion was the Coast Guard Safety Alert (Exhibit 4 attached to plaintiff's deposition). Mr. Brasseux admitted that he had only printed the document from the Coast Guard's website and that he had no experience applying this particular safety alert. (79-80). Mr. Brasseux cited the relevant language in the Safety Alert which discusses, only in general terms, the importance of properly constructing, rigging, and maintaining the gang plank, "in such a manner as to give all practical protection to the user". In attempting to explain his opinion regarding the relevance of Exhibit 4, the safety alert, to this litigation, Mr. Brasseux stated:

> If a gangplank was no feasible to be used, an accommodation ladder, Jacob's ladder, extension ladder, some type of ladder should have been utilized.

His authority for this opinion was "just, again, common sense". (82). Further, Mr. Brasseux admitted that he has never subjected his opinion to anyone for testing, peer review, or for purposes of determining the opinions acceptability in the field of marine safety or any related safety discipline. (84). Indeed, Mr. Brasseux admitted that the applicability of the cited provisions were based exclusively upon his own opinion.

Mr. Brasseux cited as the third exhibit in support of his opinion, the U.S. Coast Guard Marine Safety Manual Volume 2: Material Inspection. Specifically, Mr. Brasseux cited language in Paragraph 3 of the document entitled "Responsibility of the Crew", as support for his opinion that, the master, the captain of the vessel, is responsible for everyone's safety onboard. Mr. Brasseux was requested to cite authority for his conclusion that the language regarding the responsibility of the

9

master and other ship's officers for the proper supervision of all employment aboard a vessel applies in the highly specialized context of wireline operations when the vessel is being used as a work platform. Again, he could cite nothing more than "general policy that the captain of the ship is responsible for the ship and for everyone aboard. It is up to him. He has got final authority on safety issues and issues of that nature." When further pressed for the basis of this opinion, Mr. Brasseux stated only that "it's his boat and he is responsible for it and he is responsible for the personnel on board." Finally, Mr. Brasseux admitted that he had no authority for his opinion, and that he had never subjected his opinion to review by any peers. Morever, Mr. Brasseux could not cite any instances wherein that opinion was subject to any type of objective review.

Furthermore, Mr. Brasseux could not reconcile his opinion that the failure of the *RICK STEIRWALD* to have an alternative means of ingress and egress would render the vessel, somehow substandard, with the uncontroverted fact that the *RICK STEIRWALD* was certified by the Coast Guard. Specifically, Mr. Brasseux only responded by stating:

> Personally, I'm just guessing that they [the Coast Guard] assumed that the vessel is going to be – whatever height it is jacked up to is going to be at the same level. People are going to be boarding. It may be that is why this issue is not addressed. Like I said, I don't know.

(page 93).

Finally, Mr. Brasseux was asked to summarize his testimony on this point. Although his testimony reveals that he was second-guessing Coast Guard certification, he admitted that he did not disagree with the Coast Guard's certification of the *RICK STEIRWALD*. He stated merely that he would not have approved "their means of ingress and egress, climbing down tires and jumping to

a lower level." Specifically, he stated that since the boat was only thirty minutes from the dock, "someone should have made the call" to "bring them a damn ladder". ( 95).

2.  Mr. Brasseux's Opinion Regarding the Delegation of Responsibility for Supplying an Additional Means of Ingress and Egress:

Mr. Brasseux also proffered the opinion that the vessel should provide ladders, gangways, or suitable means of ingress and egress in the context of wireline operations. ( 95-96). Mr. Brasseux could cite no authority for his opinion that the putative duty to supply an alternative means of ingress and egress, devolved upon the vessel. (103 - 104). Specifically, Mr. Brasseux could cite no standard in the field of wireline operations, drilling operations, or drilling in the marine context that would support his opinion. Similarly, Mr. Brasseux could cite no authority, industry standard, or custom in support of his opinion that the Perf-O-Log crew had no responsibility for furnishing an auxiliary ladder. (p. 106). Mr. Brasseux cited nothing other than EBI's policy and safety manual concerning the mandatory use of gangways.[1] Indeed, Mr. Brasseux admitted that he merely assumed that liftboat operators had the responsibility to supply a ladder, although he has not reviewed any of the contracts between any of the parties and, specifically, that he has not reviewed the master work agreement between Texaco and Perf-O-Log.

As demonstrated by the foregoing references and Mr. Brasseux's deposition, his testimony does not bear the necessary inducer of intellectual rigor required under *Daubert, Kumho*, and their Fifth Circuit progeny. Specifically, Mr. Brasseux has failed to establish the validity of his reasoning or the methodology and the applicability of his reasoning of methodology or methodology to the

---

[1] As established by the plain language of the EBI policy referred to by Mr. Brasseux, there was nothing about a safety or operations manual adopted by a company which exalts the policy or operations manual into a sacrosanct duty enforced at general maritime law.

11

facts at issue. In fact, Mr. Brasseux entire deposition testimony amounted to classic, circular boot strapping. Specifically, Mr. Brasseux cited only Coast Guard guidelines and safety alerts in support of his opinion but could not establish the relevancy of those standards to the facts presented in the case. Mr. Brasseux admitted that his opinions were not subject to peer review, testing, or any other objective measure of liability. His testimony concerning the relevancy of the standards to the context of an elevating boat used as an elevating work platform, were only his opinion and nothing further.

Accordingly, EBI moves this Court to exercise its gate keeping responsibility under Federal Rule of Evidence 702, *Daubert, Kumho, Moore v. Ashland Chemical Inc.*, 151 F.3d 269 (5th Cir. 1998, by excluding the proffered opinion testimony by Mr. Brasseux on grounds that: (1) there is no sound reasoning or methodology testimony which establishes its validity and reliability; and (2) because their has been no foundation establishing the relevance of the reasoning or methodology to the context at bar; an elevating work platform.

> Respectfully submitted,
>
> BEST KOEPPEL
>
> _____
> LAURENCE E. BEST (#3012)
> PETER S. KOEPPEL (1465)
> W. BARTLETT ARY (#17909)
> Pan American Life Center
> 601 Poydras Street, Suite 2655
> New Orleans, Louisiana 70130
> Telephone:   (504) 598-1000
> Telecopier:   (504) 524-1024
>
> Attorneys for Defendant, Elevating Boats, Inc.



## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been forwarded to all known counsel of record by depositing same in the United States Mail, postage prepaid and properly addressed.

New Orleans, Louisiana, this 26 day of December, 2000.

_____

**SEE RECORD FOR EXHIBITS OR ATTACHMENTS NOT SCANNED**