



UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JERAMIE LATIOLAIS | * | DOCKET NO. 00-0085 (L) (3) |
| | * | |
| VERSUS | * | JUDGE ELDON E. FALLON |
| | * | |
| ELEVATING BOATS, INC. | * | MAGISTRATE LANCE M. AFRICK |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

I.    **PROPOSED JOINT FINDINGS OF FACT:**

a.    On January 21, 1999, plaintiff, Jeramie Latiolais was employed by Perf-O-Log, Inc., as a hoistman and was performing wirelining activities **[aboard the lift boat vessel RICK STEIRWALD.]**

> **Objection to the bracketed portion of the proposed finding as stated. Specifically, EBI disagrees with the statement that the wireline activities were being preformed aboard the RICK STEIRWALD and the characterization of the work platform as a vessel at the times relevant to this action.**

b.    On January 21, 1999, Jeramie Latiolais was working with Perf-O-Log, co-employees, Kevin Broussard and Bobby Maturin.

c.    On January 21, 1999, the lift boat vessel RICK STEIRWALD was owned and operated by Elevating Boats, Inc.

d.    **[On January 21, 1999, the [RICK STEIRWALD was contracted with Texaco, Inc., to provide lift boat vessel services for a workover job on LL&E Well No. 108.]**

> **Objection to the bracketed portion of the proposed finding as stated. Would insert the following language in substitution: Pursuant to an oral**

____Fee_____
____Process____
X  Dktd____
____CtRmDep____
Doc.No._____

**charter party between EBI and Texaco, the RICK STEIRWALD was dispatched to transport a Perf-O-Log wireline crew to LL&E Well No. 108 in Texaco's Leeville field to serve as a stationary work platform or staging area to facilitate the wireline services.]**

e.  On January 21, 1999, the lift boat vessel, RICK STEIRWALD, boat captain was Robert J. Williams, III.

f.  On January 21, 1999, the lift boat vessel, RICK STEIRWALD was equipped with a gangplank, that is a steel gangplank which is approximately 16' feet long and 24" inches wide.

g.  **[On January 21, 1999, the gangplank was the only means of ingress and egress to the RICK STEIRWALD.]**

     **EBI objects to the proposed finding as stated, because discovery has established that plaintiff and the Perf-O-Log wireline crews normally embarked and debarked by simply stepping between the lift-boat and the well deck. The proposed finding discount this reasonable means on ingress and egress between two stationary structures.**

h.  On January 21, 1999, the RICK STEIRWALD was not equipped with an extension ladder or "jacob's" ladder.

i.  On January 21, 1999, the RICK STEIRWALD was equipped with a ten ton fixed crane with a 60" boom load line and fast line.

j.  On January 21, 1999, the RICK STEIRWALD crane had a load rated at 10' foot radius.

k.  On June 3, 1999, Jeramie Latiolais underwent a laminectomy and discectomy with impaction of osteophytes at L4-5 on the right fusion surgery by Dr. Robert Nicholson.

**EBI Submits the Additional Proposed Joint Findings of Fact:**

(As plaintiff's counsel in inaccessible and EBI has not received plaintiff's response to the following submissions, the submissions are prepared in italics.)

l.  *At no time pertinent to this litigation did plaintiff, his crew, or anyone on behalf of Perf-O-Log ever request EBI, the RICK STEIRWALD, or its crew to supply an extension ladder, jacobs ladder, or any other means of embarking/debarking,*

*ingress or egress, or any other means of transport from the work platform to the well head.*

m.  *Once the* RICK STEIRWALD *arrived at the wellhead site, the use, deployment, and placement of the gangway* RICK STEIRWALD *as a means of ingress and egress was within the exclusive discretion of the Perf-O-Log crew.*

n.  *Once the* RICK STEIRWALD *arrived at the wellhead site and was positioned adjacent to the wellhead, the Perf-O-Log crew decided not to use or deploy the* RICK STEIRWALD's *gangway as a means of transport from the platform onto the wellhead site.*

o.  *Plaintiff's alleged accident occurred after the* RICK STEIRWALD *had been transformed from a floating vessel to a stationary work platform by the s.*

p.  *Under the master general work agreement between Perf-O-Log and Texaco, Perf-O-Log was required to provided "all materials, equipment, and services reasonably necessary to perform Contractor's obligations under this Agreement..."* (Master work agreement, Exhibit 15, page 1, ).

## II.  PLAINTIFF'S PROPOSED FINDINGS OF FACT:

a.  On January 21, 1999, all crew members of the RICK STEIRWALD were expected, to promote the safety and well being of all persons aboard the vessel at all times and to protect and maintain the vessel and to perform all assigned duties efficiently and completely. (RICK STEIRWALD Operations Manual, Page 17).

b.  On January 21, 1999, Robert J. Williams, III, was responsible for the RICK STEIRWALD, and was specifically charged with the safe and efficient operation of the vessel, the safety of the crew and Perf-O-Log., personnel aboard the vessel. (RICK STEIRWALD Operations Manual, page 22).

c.  On January 21, 1999, Robert J. Williams, III, was at all times responsible for the navigation, maneuvering, positioning, elevating and lowering of the RICK STEIRWALD. (RICK STEIRWALD Operations Manual, Page 23).

d.  On January 21, 1999, Robert J. Williams, III, was responsible for the reporting to EBI of any deficiency or improper functioning of any of the RICK STEIRWALD'S equipment or machinery immediately upon discovery. (RICK STEIRWALD) Operations Manual, Page 23).

e.  On January 21, 1999, Robert J. Williams, III's duties required that he ensure that a crew member be designated and act as a watchman for the Perf-O-Log crew aboard

the vessel, RICK STEIRWALD. (RICK STEIRWALD'S Operations Manual, Page 25).

f.     On January 21, 1999, it was EBI's policy that "safety is everyone's responsibility, if a job cannot be done safely - do not do it - regardless of who is directing the job. Endeavor to find a safe and responsible means to do the job. Whenever in doubt, call EBI."

g.     On January 21, 1999, it was EBI's responsibility to keep the vessel RICK STEIRWALD seaworthy and in a satisfactory condition to do the job assigned safely, for all persons aboard. (RICK STEIRWALD Operations Manual, Page 62).

h.     On January 21, 1999, it was EBI's policy that "the gangway must be utilized when crossing a space between a vessel and dock or structure." (RICK STEIRWALD Operations Manual, Page 63).

i.     On January 21, 1999, it was EBI's policy that jumping on and off of equipment, either moving or stationary was strictly prohibited. (EBI Safety and Environmental Program, (Policy and Procedures Manual, Page 3).

## III.   PLAINTIFF'S PROPOSED CONCLUSIONS OF LAW.

a.     Negligence may consist of the failure to provide or maintain a reasonably safe means for a passenger to debark. The failure to provide a reasonably safe means of debarking, with subsequent injuries to the passenger, is a tort within the Court's Admiralty jurisdiction. *Kermarec v. Compagnie Generale Trans-Altlantique*, 358 U.S. 625, 79 S.Ct. 406, 3. L.Ed. 2d 550 (1959);

b.     The owner of a vessel must provide its passengers with a reasonably safe means of boarding and debarking, including a provision for proper and safe gangways, or other means of ingress and egress, landing places and personnel assistance. *Tittle v. Aldacosta*, 544 F.2d 752 (5th Cir. 1977); *Arthur v. Flota Mercante Grand Centro Americana, S.A.*, 485 F.2d 561 (5th Cir. 1974).

c.     A passenger must exercise reasonable care and prudence. A vessel owner if not an absolute insurer of the passengers safety, if the passenger is injured, absent vessel owner negligence, no recovery is mandated. A passenger cannot recover for negligence that was not foreseeable or the proximate cause of the injury. *Counts v. Lafayette Crew Boats, Inc.*, 622 F. Supp. 299 (U.S.W.D. 1983); *Marshall v. Westfal-Larsen & Company*, 259 F.2d 575 (9th Cir. 1958).

d.     Every act whatever of man that causes damage to anther, obliges him by whose fault it happen to repair it. Louisiana Civil Code Article 2315.

4

e.  Masters and employers are answerable for the damage occasioned by their servants and overseers, and exercise of the functions which they are employed. Responsibility only attaches when the masters or employers might have prevented the act which caused the damage, and have not done it. Louisiana Civil Code Article 2320.

IV   **EBI'S PROPOSED FINDINGS OF FACT:**

**Findings Regarding Issues of Duty**:

A.  The exclusive engagement of the *Rick Steirwald* and its crew, on January 21, 1999, was to: (1) transport the Perf-O-Log wireline crew to the well site aboard the lift boat; and (2) elevate the work platform to a height directed by the Perf-O-Log crew. (Deposition of Captain Williams, *passim*)

B.  Neither EBI nor its captain or crew contracted or otherwise assumed any duty to supply any additional or specialized equipment for Perf-O-Log's wireline operations. (Deposition of Captain Williams, *passim*)

C.  Neither EBI nor its captain or crew exercised or retained any discretion in the elevation of the platform. (Deposition of Captain Williams, 34-36, & *passim*)

D.  EBI did not assume, by contract, practice, custom or otherwise, any responsibilities, duties, or any role, whatsoever, in the performance of the wireline services.

E.  The crane on the lift boat was operated exclusively by the Perf-O-Log wireline crew. (Deposition of Captain Williams, pp. 28,-29, 50) (deposition of plaintiff at 48-49).

F.  On January 21, 1999, and as a matter of custom and practice, the captain or crew of the *Rick Steirwald* only activated the power supply to the crane motor from the wheelhouse. (Deposition of Captain Williams, pp. 50. )

G.  Neither the Captain of the *Rick Steirwald* nor his deck hand played any role in the placement of the gangway, once the *Rick Steirwald* arrived at the work site. (Deposition of Captain Williams, pp. 29, 30, 34-36, 38, 50.)

H.  Once at the work site, all decisions regarding the use and placement of the gangway were left to the exclusive discretion of the Perf-O-Log crew, as the Perf-O-Log crew assumed control over the work platform and the height of the work platform. (Deposition of Captain Williams, pp.38.)

I.    Neither, EBI, nor the Captain of the *Rick Steirwald,* nor his deck by contract, practice, custom or otherwise, any responsibilities, duties, or any role, whatsoever, in providing the equipment necessary to perform wireline operations.

J.    Neither, EBI, nor the Captain of the *Rick Steirwald,* nor his deck by contract, practice, custom or otherwise, any responsibilities, duties, or any role, whatsoever, in inspecting the sufficiency of the equipment brought aboard by Perf-O-Log.

K.    EBI's exclusive engagement under the charter was to provide transportation to the site for Perf-O-Log's crew and their equipment and to provide a work platform or staging area for the wireline crew.

L.    The decision not to use the gangway supplied as a means of access to the well head was a decision made exclusively by plaintiff and the Perf-O-Log crew.

M.    Neither plaintiff nor any member of the Perf-O-Log crew requested the captain or crew of the *Rick Steirwald* to lower the platform or to provide any other means of traversing the decks.

N.    The level of the platform was entirely within control of plaintiff's wireline crew and the height differential was specifically commanded by the wireline crew.

**Findings Regarding Causation:**

A.    Plaintiff, Jeramie Latiolais, failed to report any work related injury to Perf-O-Log's safety director, Harold Short, either on the day of his alleged injury, January 21, 1999, or during several subsequent conversations with Harold Short. (Deposition of Harold Short, pp___.) (Defendant's Exhibits: 29).

B.    Plaintiff, Jeramie Latiolais, originally attributed his symptoms to an old back injury. (Deposition of Harold Short, pp___) (Deposition and medical records of Drs. Stelly, and Bertuccini)

C.    Jeramie Latiolais inquired of Perf-O-Log's safety director, Harold Short, whether plaintiff should file a worker's compensation claim or a disability claim. Short explained the difference between the two claims, and advised plaintiff to file a workers' compensation claim if the injury was work-related and a disability claim if the injury was not work related. After receiving this advice, plaintiff filed a claim for disability benefits.

D.    Plaintiff, Jeramie Latiolais, did not inform his employer of any work related incident on January 21, 1999, until over six weeks after the incident on March 15, 1999.

E.    In the medical history given by plaintiff to Dr. Stelly, plaintiff mentioned nothing about a work-related in jury in January of 1999.

F.    In the medical history given by plaintiff to Dr. Stelly, plaintiff complained of a recurrence of back pain which had resumed twenty-five days before the February 2, 1999, examination.  According to plaintiff's history, the back pain resumed two weeks before the alleged January 21, 1999, incident. (Dr. Stelly's records, Exhibit ___).

G.    In the history given by plaintiff to Dr. Bertuccini, who saw plaintiff on referral by Dr. Stelly, plaintiff, again, made no mention of a work-related accident.  Plaintiff attributed his symptoms to a November 1997 injury. (Dr. Bertuccinni's records; Exhibit ___).

H.    It was not until plaintiff saw Dr. Nicholson on referral by plaintiff's attorney, that plaintiff attributed his back pain to a work related incident. Even on this occasion, plaintiff referred to a injury on January 28th or 29th, 1999, (and not the January 21, 1999, date when EBI was dispatched to transport plaintiff and his crew to the wellhead site.) (Deposition of Dr, Nicholson pp. ____).

I.    Plaintiff's treating orthopedist, Dr. Nicholson testified that he was heavily dependent upon the veracity of the medical history, as related by plaintiff, in assigning a causal role of the January 21, 1999, to plaintiff's symptoms. (Deposition of Dr, Nicholson pp. ____).

J.    In light of the inconsistent medical histories provided by plaintiff, it was impossible for Dr. Nicholson to state that it was more probable than not that the alleged incident of January 21, 1999, caused plaintiff's injuries. (Deposition, Robert Nicholson, pp.___).

K.    Dr. Nicholson's putative rehabilitation by plaintiff's counsel is unavailing. Specifically, Dr. Nicholson's merely stated on re-direct his conclusion that "something happened" in of January 1999, to trigger plaintiff's symptoms does not satisfy plaintiff's burden of proof that the alleged incident of January 21, 1999, was the cause of plaintiff's accident.

**Findings Regarding Comparative Fault:**

A.    At the time of his injury, plaintiff, Jeramie Latiolais, was experienced in wire line operations having worked for his employer, Perf-O-Log for a period of nearly seven years, both as a hoistman and as a rigman. (Plaintiff's deposition pp___)

B.    Plaintiff, Jeramie Latiolais, as an experienced wire line operator, had previously encountered, on numerous occasions, the situation which he alleges to have caused his injury:  a height differential between the elevated work platform and the deck, "grating", "platform," or "cribbing" of the well head.  (Plaintiff's deposition pp__)

C.    Plaintiff knowingly and voluntarily, chose to step down from the deck of the work platform onto the well head deck without using the gangway supplied by EBI.

D.    Plaintiff was not compelled to jump from the platform to the well head by any emergency or exigency.

E.    Plaintiff never requested his employer, Perf-O-Log, to supply an extension ladder.

F.    Plaintiff never reported the absence of an extension ladder as a hazardous, dangerous, or otherwise problematic condition as required by his employer's safety manuals.(Plaintiff's deposition pp__)

F.    Plaintiff never requested the deck hand or the captain of the *Rick Stierwald* to supply an alternative means of transport onto the well head. (Plaintiff's deposition pp__)

G.    Plaintiff never requested the captain or the deck hand of the *Rick Stierwald* to place the gangway as a means of transport onto the well head.

G.    Plaintiff never requested his employer, Perf-O-Log, to supply an alternative means of ingress or egress to and from the well head.  (Plaintiff's deposition pp__)

H.    Plaintiff never requested the captain of the *Rick Stierwald* to lower the deck of the work platform to facilitate his ingress and egress.

I.    Over the seven year course of his employment with Perf-O-Log, plaintiff never reported the lack of any alternative means of ingress and egress between the well platform and the work platform as a hazardous or dangerous condition, or otherwise posing a safety risk as required by Perf-O-Log's employee safety manual. (Plaintiff's deposition pp__)

J.    It was a common and exclusive practice of plaintiff and his employer, Perf-O-Log, to perform wireline operations without an alternative means of ingress or egress between the work platform and the wells being serviced. (Plaintiff's deposition pp__)

K.    On the date of his alleged injury, there was no emergency or other exigent circumstance that would excuse plaintiff from his obligations of using reasonable care for his own safety.

8

L.    Plaintiff knowingly and voluntarily chose to jump from the deck of the work platform onto the well head deck.

## V.    EBI'S PROPOSED CONCLUSIONS OF LAW:

### A.  Proposed Conclusions of Law Regarding Issues of Duty:

1.    The General Maritime Law's Duty of "Reasonable Care Under the Circumstances":

"The owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case." *Kermerac v. Compagnie Generale Transatlantique,* 632, 79 S. Ct. 406, (1959).

Since the duty under *Kermarec* varies "under the circumstances of each case," the control exercised by plaintiff and his crew over an area or aspect of the vessel, such as its elevation, which is alleged to have caused plaintiff's injury is a circumstance which may vitiate any duty that might otherwise bind a vessel owner at general maritime law.

In the case at bar, the control exercised by plaintiff and his wireline crew superceded any responsibility of the *RICK STEIRWALD* when it was used as the wireline crew's work platform. Similarly, the decision of the Perf-O-Log crew not to use the means of ingress and egress that was provided, was a matter exclusively within their province, and was a decision over which EBI had no duty or authority to second guess.

Similarly, the status of plaintiff, as an experienced wireline operator who regularly encounters the situation which allegedly caused his injury--a height differential between the platform and the well deck--is another circumstance that vitiates or mitigates a EBI's duty of care at general maritime law.

Further, under the peculiar and highly specialized wireline operations, wherein the vessel's crew is directed to stay inside the cabin of the lift vessel during the use of explosives, any residuary duty of EBI as vessel owner should be vitiated under the extraordinary circumstances of this case.

2.    The Duty to Supply Reasonable Means of Ingress and Egress in the Context of an Elevating Lift Vessel used as a Work Platform:

a).    The general maritime law imposes no duty upon EBI to supply a reasonably safe means of ingress and egress from a work platform:

As applied to a multi-purpose craft, such as the *Rick Steirwald,* the duty to provide a reasonably safe means of ingress and egress applies *only when the equipment is being used as a transport vessel.* This Court has recently recognized--in the specific context of an ingress/egress case--the distinction between the duty owed by a transport vessel and the duties owed by a vessel when used as a work platform. In the case of *Cotone v. Mallard Bay Drilling*, 98-3601"L", (July 18, 2000), plaintiff brought an action under 905(b) and the general maritime law alleging that a vessel owner was negligent in failing to provide a reasonably safe means of ingress and egress between two barges tied fast to one another leaving a height differential between the two barges. The Court granted summary judgment to the barge owners holding that any duty of a vessel under 905(b) *or* general maritime law to provide reasonable ingress and egress to a person traversing the barges *applied when the barge was being used as a vessel, and not when it was being used as a stationary work platform.* On the undisputed facts, the *RICK STEIRWALD*, like the barge in *Cotone,* was being used as a stationary work platform, not as a transport vessel at all times material to plaintiff's alleged accident. Accordingly, on the facts presented, EBI owed no duty to provide any means of ingress and egress from the work platform to the wellhead.

EBI's duty of exercising reasonable care under the circumstances, did not encompass the duty to supply an alternative means for the wireline crew to traverse between EBI's stationary work platform and the well platform, particularly on the undisputed facts wherein plaintiff did not use the means of ingress and egress supplied, did not request the captain or crew of the *Rick Steirwald* to supply an alternative means of traversing the structures, and and wherein the height differential confronting plaintiff was a matter under his direction and control.

   b.)   None of the risks that animate a duty at general maritime law to provide reasonably safe ingress and egress are implicated on the facts at bar.

Moreover, any rationale for imposing a duty at general maritime law of safe ingress and egress evaporates when the *RICK STEIRWALD* was in an elevated position at the behest of plaintiff's crew. The risks associated with ingress and egress from a vessel which animate the duty to provide safe ingress and egress are not present in the context of a stationary work platform. For instance, the risks associated with the effects of the sea, the ebb and flow of the tide, wave action, pitching decks, the risk of capsizing, collision and the like are not present in the case of two adjacent stationary platforms

   c.)   EBI complied with any duty imposed by General Maritime Law.

Even assuming *arguendo*, that EBI owed a duty on the facts presented to supply a reasonably safe means of ingress and egress to and from the platform, EBI complied with that duty by having gangway available for plaintiff's use and by adjusting the elevation of the platform pursuant to plaintiff's command.

10

**B.    Proposed Conclusions of Law Regarding Causation and Intervening Cause:**

1.    Plaintiff has failed to Establish Medical Proof of Causation:

    In light of plaintiff's inconsistent and irreconcilable accounts of the onset of his symptoms, including: plaintiff's failure to report a work-related accident until several weeks after the alleged incident of January 21, 1999; his initial characterization of his injuries as symptoms recurrent from an old back injury; and the medical histories given by plaintiff to Drs. Stelly and Bertuccinni, (wherein plaintiff failed to mention any work related accident in January of 1999, and attributed his pain symptoms to an old injury), plaintiff has failed to sustain his burden of proving by a preponderance of the evidence, that the alleged incident of January 21, 1999, caused plaintiff's low back injury for which he seeks recovery in this litigation.

    This conclusion is compelled by the inconsistent medical histories, and by the testimony of plaintiff's treating orthopedist, Dr. Nicholson, regarding the significance of the inconsistent histories. Dr. Nicholson testified first that, any opinion assigning a causal role to the January 21, 1999, incident, to plaintiff's injuries, was heavily dependent upon the veracity of the medical history related by plaintiff. Further, Dr. Nicholson testified that, in light of the inconsistent medical histories provided by plaintiff, it was impossible for Dr. Nicholson to state that it was more probable than not that the alleged incident of January 21, 1999, caused plaintiff's injuries. (Deposition, Robert Nicholson, pp.__).

2.    Plaintiff's Recovery is Barred by the Superceding or Intervening Cause of Plaintiff's Willful Act of Jumping from the Platform onto the Wellhead Deck.

    On the facts at bar, plaintiff's conduct in jumping from the platform amounts to a superceding and intervening cause. Accordingly, any putative breach by EBI's in failing to provide a specialized means of ingress and egress was not the proximate cause of plaintiff's injuries.

    (See generally, *Jackson v. Pittsburg S.S. Co.* 131 F2d 668 (6th Cir, 1942) denying recovery *in a Jones Act case to a seaman* on grounds that the shipowner's failure to provide a means of egress to plaintiff who jumped six feet to the dock. *A fortioiri,* on the facts at bar, plaintiff must be denied recovery under the lower standard of care imposed upon EBI by the general maritime law.)

**C.    Proposed Conclusions of Law Regarding Intervening Cause and Comparative Fault:**

1.    The general maritime law regime of comparative fault applies to this action.



2.      Plaintiff's conduct, in jumping from the deck of the platform onto the wellhead deck--particularly in the absence of any emergency or even any exigency--amounts to unreasonable, careless, and reckless conduct which plaintiff deliberately chose of his own volition, and which was not compelled by any circumstances confronting plaintiff. As such, plaintiff's recovery is barred as his alleged injuries were caused 100% by plaintiff's negligence.

3.      Plaintiff's conduct in: (1) jumping to platform deck after he or his crew had directed the elevation of the work platform; (2) failing to use the supplied means of ingress and egress the gangway; (3) failing to request the lowering of the platform deck; (4) failing to request other means of assistance from the captain of the liftboat or its crew or to call attention in any other way to minimize his own danger. These conclusions are particularly warranted when considering that plaintiff was an experienced wireline operator who had encountered these circumstances on a regular basis.

See *Counts v. Lafayette Crewboats, Inc.* 622 F. Supp. 299 (W.D. La. 1983). (passenger's recovery barred by his own negligence in: (1) attempting to board a vessel before it was sufficiently close to the platform; (2) not timing his step to coincide with the boat's movement up; (3) not utilizing the swing rope so that he could swing back if the boat's movements were not conducive to boarding and/or (4) not requesting assistance if any was needed.

For examples of applications of contributory negligence in the context of seaman's Jones Act Claims for inadequate ingress and egress, see generally:

*Meintesma v. U.S.* 164 F.2d 976 (9th Cir. 1948): (Ship owner not liable for injuries sustained by seaman who, on descending the gangway and finding it not fully extended, decided to jump the three foot distance to the deck instead of asking someone to extend the gangway, was not liable.)

*Garcia v. Dover Shipping Co.*, 380 F.Supp 607 (E.D. Pa. 1974); (Plaintiff assigned 100% contributory negligence for failing to immediately advance up jacob's ladder while at high point of the swell. )

*Casselman v. Tug Captain Kelly*, 215 F.Supp. 240 (E.D.La. 1963) aff'd 322 F.2d 820 (5th Cir. 1963) (Seaman denied recovery after injuring himself by jumping 4-6 feet between two vessels. Seaman's actions were deemed the sole cause of his injuries.)

*Superior Oil Co. v. Trahan*, 322 F.2d 234 (5th Cir 1963): (seaman attempted to jump from one vessel to another while vessels were swinging apart. Seaman held 75% contributorily negligent for not requesting help from the captain or taking other steps to minimize his own danger.)

Each of the aforementioned cases arose in the context of seamans' Jones Act claims wherein the vessel owner owes an exacting duty. Conversely, the standard of care applicable to EBI on the facts at bar is the general maritime law's standard of "reasonableness under the circumstances." Particularly under this standard, plaintiff's comparative fault should be deemed the exclusive cause of plaintiff's alleged injuries, and any recovery by plaintiff should be barred.

Signed this _____ day of _____, 2000, at New Orleans, Louisiana.

_____
**JOSEPH F. GAAR, JR.** (16927)
P.O. Box 2053
Lafayette, Louisiana 70502
Telephone:     (337) 233-3185

**ATTORNEY FOR PLAINTIFF,
JERAMIE LATIOLAIS**

*12-21-2000*

_____
**LAURENCE E. BEST (3012)**
**PETER S. KOEPPEL (1465)**
**W. BARTLETT ARY (17909)**
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
Telephone:     (504) 598-1000

**ATTORNEYS FOR DEFENDANT,
ELEVATING BOATS, INC.**

_____
**KAYE N. COURINGTON** (18582)
**SCOTT B. KIEFER (**18980)
322 Lafayette Street
New Orleans, Louisiana 70130
Telephone:     (504) 524-5566

**ATTORNEYS FOR INTERVENOR,
LIBERTY MUTUAL INSURANCE GROUP**

13