COPY IN CHAMBERS

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 JAN -9 PM 2:20

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JERAMIE LATIOLAIS** | * | **DOCKET NO. 00-0085 (L) (3)** |
| | * | |
| **VERSUS** | * | **JUDGE ELDON E. FALLON** |
| | * | |
| **ELEVATING BOATS, INC.** | * | **MAGISTRATE LANCE M. AFRICK** |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### EBI'S SUPPLEMENTAL PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendant, Elevating Boats, Inc. ("EBI") submits the following supplemental *Proposed Finding of Fact and Conclusions of Law*:

I. **Proposed Findings of Fact And Conclusions of Law Related to the Deposition Testimony of Harold Short.**

The parties have agreed to introduce the deposition of Harold Short in lieu of his live testimony. Mr. Short has been deposed twice, once in the workers' compensation proceeding and again in the instant litigation. Shortly before his deposition on November 28, 2000, Mr. Short underwent extensive open heart surgery. He is convalescing from the surgery, and although he acknowledged that he could testify, if necessary, the parties have stipulated to the admission of the deposition testimony and the exhibits discussed therein to relieve Mr. Short from further burdens of this litigation and to streamline the presentation of evidence at trial. The deposition is submitted as Exhibit 31.



The following proposed findings of facts are derived from Mr. Short's deposition testimony:

**A.     Proposed Findings Regarding Safety Policies of Perf-O-Log:**

1. Mr. Short is a Perf-O-Log employee who has worked in the capacity as safety coordinator since 1992. His responsibility in this capacity includes the inspection of work sites, the processing of new hires, monitoring drug testing, and other administrative duties. (Dep. p. 10).

2. Safety handbooks are issued individual to employees upon hire. (Dep. pg. 13); Perf-O-Log has also adopted a more comprehensive safety and health policy manual. The distinction between the two documents is that the handbook individually distributed to employees is a compacted version of the more comprehensive Safety and Health Policy Manual. The Safety and Health Policy Manual is available to the employees at the Perf-O-Log office. (Dep. pgs. 20-21). (The Employee Safety Handbook has been introduced as Exhibit 34. Perf-O-Log's Safety and Health Policy Manual has been introduced as Exhibit 33).

3. Safety is a priority at Perf-O-Log, and safety suggestion from frontline employees, such as Jeramie Latiolais, are encouraged. (Dep. pg. 25).

4. Perf-O-Log has adopted a safety incentive program wherein individual employees, classified in groups, are given financial incentives for the achievement of the company's safe workplace goals. The witness, Harold Short, does not receive any safety incentives. (Dep. pg. 26).

**B.     Proposed Findings Regarding the Provision of Auxiliary Equipment.**

1. Work orders are generally initiated when Texaco calls and gives Perf-O-Log specification for a job. Texaco sometimes specifies equipment needed. (Dep. pg. 31-33).

2. Texaco has, on occasion, specifically required Perf-O-Log to bring along equipment such as extension ladders. (Dep. pg. 34).

3. Perf-O-Log would normally rent such equipment. (Dep. pg. 35).

4. If Texaco had requested an extension ladder, Perf-O-Log would "hot-shot" (expeditiously transport by courier) the equipment to the job site. (Dep. pg. 41)

5. If there was a need "to go up" (*i.e.* a need for a ladder), Perf-O-Log probably provide it...(Dep. pg. 41).

6. If there were a need for a ladder in a shallow-water plug back in perforation operation in the Louisiana marsh off of a jack up boat, either Texaco or Perf-O-Log could supply the ladder. (Dep. pgs. 41-42).

7. Mr. Short had no knowledge of Perf-O-Log ever requesting EBI or any other jack up boat company to provide certain equipment, such as a ladder. (Dep. pg. 44).

8. Mr. Short testified that if such a ladder was needed, it would be produced by Perf-O-Log from a rental company. (Dep. pg. 44).

9. No Perf-O-Log employee has ever brought to Mr. Short's attention the need for a ladder as an alternative means of getting onto or off of a jack up vessel during wireline operations. No one, including Jeramie Latiolais has ever raised the problem as a safety concern. (Dep. pgs. 44-45).

C. **Short's Testimony and Records Concerning the Plaintiff's Failure to Initially Report Any Work-related Injury.**

1. Harold Short testified that on February 2, 1999, plaintiff telephoned Short on plaintiff's day off to advise Short that plaintiff had just been to a doctor for back pain. (Dep. pgs. 46-47)

2. Short stated that Latiolais intimated that the purpose of this call was to advise Mr. Short that he was unable to return to work, as scheduled, on the following day. Plaintiff said nothing in this conversation about having been injured on the job. (Dep. pgs. 46-47)

3. Short stated that, during a subsequent phone call on February 9, 1999, plaintiff asked Mr. Short whether to file a short term disability claim or a workers' compensation claim. Mr. Short stated that he explained to plaintiff, in this conversation, the difference between a short-term disability claim and a workers' compensation claim. Specifically, Short advised plaintiff in this conversation: if the illness or injury occurred of the job, plaintiff should file a short-term disability claim; whereas, if the injury occurred on the job, plaintiff should file a worker compensation claim. (Dep. pg. 47-48).

4. Mr. Short stated that the plaintiff subsequently decided to file a short term disability claim. Short inferred from plaintiff filing of the claim, after his explanation, that his injuries/illness was not job-related. (Dep. pg. 48). The

|   |   |
|---|---|
|   | disability form, signed by plaintiff on February 23, 1999 is attached as part of Exhibit 32. |
| 5. | Mr. Short testified that on March 15, 1999, while plaintiff was "on short term disability," plaintiff came to the office to file a worker's compensation claim. (Depo. pg. 49). |
| 6. | Plaintiff did not explain the reason for his change. |
| 7. | Mr. Short classified the injury on the First Report of Injury form as a "re-injury." |
| **D.** | **Delegation of responsibilities between the parties at the work-site.** |
| 1 | Mr. Short explained that the explosives used in a wireline operation are placed in an explosives box. He stated further that Perf-O-Log employees were not instructed to transport the explosives box in any particular way. (Dep. pg. 62). |
| 2 | He stated that the decision was left up to the employees to transport the explosives "as safety as possible." (Dep. pg. 63). |
| 3. | Mr. Short stated that he defers to the expertise of the wireline workers in the field regarding the transportation of explosives. (Dep. pg. 63-64). |
| 4. | Mr. Short stated that Perf-O-Log does not delegate any responsibility to the EBI crew for the direction of Perf-O-Log employees on how to handle explosives or on how to perform wireline operations. (Dep. pg. 64). |
| 5. | Mr. Short agreed that both Texaco and EBI should rely on the expertise of Perf-O-Log's employees regarding wireline operations. (Dep. pg. 64). |
| **E.** | **Plaintiff's Experience in Wireline Operations:** |
| 1. | Short stated that a hoistman of seven years experience (such as Jeramie Latiolais) would have gained a sophisticated understanding of wireline operations. (Dep. pgs. 65-66). |
| 2. | He stated further that, if a Perf-O-Log hoistman of seven years experience had not learned how to safely and effectively perform wireline operations, the employee would have been dismissed from the company. (Dep. pgs. 65-66). |

4

3.  Regarding plaintiff's contention that Harold Short directed him to file his claim as a disability claim; Mr. Short emphatically denied that he directed plaintiff how to file his claim. (Dep. pg. 66).

4.  Mr. Short stated that it is plaintiff responsibility for the reporting of his injury. (Dep. pg. 66).

5.  When challenged with plaintiffs contrary testimony, wherein plaintiff stated that Mr. Short told him to file the claim as a disability claim, Mr. Short responded:

    > To be very kind, sir, I don't give a damn what he testified to. I'm letting you know that Jeramie Latiolais came to us on the 15th of March to tell us that he got hurt on Texaco which nobody knew about it but him. (Dep. pg. 66-67).

F.  **Short's Cross Examination by Plaintiff's Counsel:**

1.  On cross-examination, Mr. Short rejected the attempt of plaintiff's counsel to get Mr. Short to concede that Perf-O-Log's accident reporting policy is contrary to its safety incentive program. Specifically, Mr. Short stated that a safety incentive is not lost by mere filing of an accident report. He stated that only a "recordable event," defined as injury requiring medication or some form of diagnostic test, would be counted as an event disqualifying employee for an incentive. (Dep. pgs. 76-77).

2.  Mr. Short gave his deposition only a few weeks after he underwent extensive open heart surgery. Mr. Short took grave offense at plaintiff's counsel suggestion that Perf-O-Log's safety incentive program had the effective dissuaded the reporting of injuries. (Dep. pgs. 84-85).

3.  In response to plaintiff's questions suggesting that the Perf-O-Log's employees were dissuaded from reporting accidents by the Safety and Incentive Program, Mr. Short stated:

    > Sir, I don't know what the hell you're insinuating, but I'm letting you now the individual is responsible for their action. They are responsible and every company has their own policy, and the policy of Perf-O-Log is that, as a responsible person, and we have informed everyone, if you're going to report injuries that occur on our premises and other premises, we should document it, sir. If the person doesn't do that and we

      don't have knowledge about it, that 's the individual's
      responsibility, period. (Dep. pg. 81).

  **G.**  **Cross Examination of Short on Delegation on Responsibilities:**

1.  Mr. Short declined the plaintiff's counsel aggressive invitation to state that EBI should have provided a ladder. After Mr. Short was relentlessly pressed on this issue, he stated only that it would have to be a matter of agreement between the parties. (Dep. pgs. 103-107).

  **I.**  **Short's Testimony on Re-Direct:**

1  Mr. Short stated that Perf-O-Log's employees are required to make sure that all persons stay away from the work during the loading and capping of explosive on wireline operations. (Dep. pg. 109).

2.  Mr. Short stated that plaintiff, Jearmine Latiolais, had a demonstrated knowledge of accident reporting procedures of Perf-O-Log. (Dep. pg. 112).

3.  Mr. Short stated further that Jeramie Latiolais had never been dissuaded or prevented in the past from filing injury report by Perf-O-Logs' Safety and Incentive Program. (Dep. pgs. 112-113).

4.  Mr. Short denied, outright, Jeramie Latiolais' contention that either Perf-O-Log would retaliate against an employee for filing injury reports or complaining about safety problems. He stated that employees are encouraged to work safely and that it is "everyone's responsibility to follow policy. And if Jeramie Latiolais elected not to report an injury when he should have reported it, he is responsible for that action." (Dep. pgs. 113-114).

**II**  **Proposed Findings of Fact and Conclusions of Law on Regarding the Issue of Duty and the Assignment of Comparative Fault to Plaintiff's Employer, Perf-O-Log:**

As set forth in the proposed conclusions of law previously submitted, EBI owed no duty to provide reasonably safe means of ingress and egress–as a matter of general maritime law, contract, or industry custom–on the undisputed facts f this case where the equipment was used as a stationary work platform, and not as a transport vessel. (See V(A)(2)( a-b)). Even assuming *arguendo*, that such a duty is imposed, EBI complied with the duty by: (1) supplying a gangway available for

plaintiff's use; and (2) adjusting and maneuvering the work platform pursuant to the command of plaintiff's crew. (V(A)(2)( c)).

Accordingly, the following proposed findings of fact and conclusions of law are submitted only in alternative and only in the event that the Court imposes a duty on EBI and finds that EBI breached such putative duty.

    **A.**    **Proposed Findings of Fact and Conclusions of Law Regarding the Assignment of Comparative Fault to Plaintiff's Employer:**

1. Plaintiff's employer, Perf-O-Log, has a duty, under substantive Louisiana law, to furnish reasonably safe employment including safety devices and safeguards; and to "adopt and use methods and processes reasonably adequate to render such employment and the place of employment safe in accordance with the accepted or approved practice in such or similar industry or places of employment considering the normal hazard os such employment, and shall do every other thing reasonably necessary to protect the life, health, safety and welfare of such employee." La. R.S. 23:13

2. If, as plaintiff contends, a ladder was required as an alternative means of transport from the work platform of the *Rick Stierwald* to well platform, plaintiff's employer, Perf-O-Log, contractually assumed any obligation to provide such equipment in the master work agreement between Perf-O-Log and Texaco, wherein Perf-O-Log agreed:

   > to provide all materials, equipment, and services reasonably necessary to perform contractor's obligations under the agreement. (Ex. 16 section 1(b)).

3. Perf-O-Log had an independent duty, as time charterer, to supply any auxiliary equipment such as an extension ladder.

4. The rule of pure proportional fault promulgated in *United States v. Reliable Transfer* Co. 421 U.S. 411 (1975) applies to this action.

5. Under either the proportional fault rule of *Reliable Transfer* Co., or the comparative fault regime of La. Civil Code Article 2323, the fault of plaintiff's employer, Perf-O-Log, must be determined in the assignment of comparative fault. La. C.C. Art 2323-2324.

Signed this 8th day of January, 2001, at New Orleans, Louisiana.

                                    Respectfully submitted,

                                    BEST KOEPPEL

                                    _____
                                    LAURENCE E. BEST (3012)
                                    **PETER S. KOEPPEL (1465)**
                                    **W. BARTLETT ARY (17909)**
                                    Pan American Life Center
                                    601 Poydras Street, Suite 2655
                                    New Orleans, Louisiana 70130
                                    Telephone:   (504) 598-1000

                                    **ATTORNEYS FOR DEFENDANT,**
                                    **ELEVATING BOATS, INC.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been hand delivered to plaintiff's counsel by ~~depositing the same in the United States Mail, postage prepaid and properly addresse~~d.

New Orleans, Louisiana, this 8th day of January, 2001.

                                    _____